Huey Augustus **POWELL**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19030.

United States Court of Appeals Fifth Circuit.

Dec. 8, 1961.

Rehearing Denied March 27, 1962.

H. Grady Rawls, James W. Taxi Smith, Albany, Ga., for appellant.

William A. Davis, Jr., Asst. U. S. Atty., Macon, Ga., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Powell was indicted jointly with Thurman L. Rentz for violation of certain sections of the Internal Revenue Code of the United States dealing with the manufacture, sale and otherwise handling of distilled spirits, including one count charging conspiracy with Rentz and with others named but not indicted. He was convicted on six counts of the eleven count indictment, including the conspiracy count, and was sentenced to imprisonment. He appeals, specifying that the court below erred in refusing to dismiss certain counts in the indictment, in denying appellant's motion for acquittal upon certain counts, in permitting the United States Attorney to read, during his closing argument, from a written confession Rentz had given, and in giving supplementary charges to the jury which amounted to coercion by the court. We think that the court below did not err in refusing to dismiss the challenged

counts of the indictment and in denying appellant's motion for a directed verdict; but we are of the opinion that the court below did commit reversible error in its supplementary charges.

These supplementary charges were given after the jury had retired following the original charge, and the question presented is whether, in so doing, the court below exceeded the limits of the "Allen Charge."[1] The substance of the Allen charge has been approved in a large number of decisions by subordinate federal courts, including several from this Circuit.[2] The Allen charge is sometimes referred to as the "dynamite charge." In commenting on that nature of the charge, we said, in Silverman, supra, 277 F.2d page 264: "Although it is better practice to avoid supplementary charges, the propriety of such charges rests largely in the discretion of the trial judge. * * * We find that the charge did not blast the jury into action in any way prejudicial to the plaintiffs. * * *"

The appellant argues that the handling of the jury and the wording of the charges based upon the Allen case did, under the circumstances disclosed by the record, have a coercive effect upon the jury.

After the jury had been fully charged by the court, the charge occupying sixteen pages of the printed record, it retired to the jury room at 5:20 P.M. It was brought back before the court fifteen minutes later, at 5:35 P.M., in order that the court might correct an error it had made in its charge, to which action no exception was taken. Having retired to its room at 5:46 P.M., the jury returned to the courtroom at 7:00 P.M. to request that the court give it some more "information on just what created a conspiracy." The court had a portion of its

original charge reread to the jury, and inquired of the jury whether it desired to go to supper. But the jury returned to its room at 7:10 P.M., following which appellant excepted to the supplementary charge given by the court.

The jury was called back to the courtroom at 10:10 P.M.[3] and asked if it had reached a verdict. After receiving a negative answer from the foreman, the court asked if the jury had agreed on a verdict as to any count of the indictment and the foreman again gave a negative reply. It then asked of the foreman, "What seems to be the trouble? Is it a question of law or a question of fact?" The foreman responded: "Question of fact, sir." Thereupon, the court gave to the jury a reasonably accurate paraphrase of the Allen charge. It added some words, however, not embraced within the carefully measured language of the Allen charge or within the purview of any other case called to our attention. The quoted language includes some of the approved Allen charge, but adds additional comments:

"As I said, it is your duty to agree on a verdict in this case if you conscientiously can do so. This case has been fully and completely tried, with able counsel on both sides, presumably with every witness which each side wanted to produce before you, presumably with every question asked every witness that either side wanted to ask. It is all in your laps for decision. Some jury will have to pass upon this case and you twelve men are just as competent as any other jury would be to dispose of it.

"Now let me say this. It is no credit to a juror to stand out in a

1. Allen v. United States, 1896, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528.

2. Weathers v. United States, 5 Cir., 126 F.2d 118; Wilson v. Southern Farm Bureau Casualty Co., 5 Cir., 275 F.2d 819, 823; Silverman v. Travelers Ins. Co., 5 Cir., 277 F.2d 257, 264; and Sikes v. United States, 5 Cir., 279 F.2d 561, 562.

3. The record does not show specifically whether the jury returned, on this and subsequent occasion, upon its own motion or upon the call of the court. The opening questions asked by the court in each instance indicate that these returns of the jury were at the instance of the court.

pure spirit of stubbornness, and I don't mean to indicate that any one or more of you are doing that. I don't know and I don't want to know. But the law says that if that should be the case it is no credit to a juror to stand out in a pure spirit of stubbornness because he has taken a position, and he should not hesitate to change his position if he becomes convinced that the position is erroneous. It is the duty of every juror to consult with every other juror and reach a mutual understanding in the case, if that can be conscientiously done. I do not mean to say that a juror is to give up an abiding conviction in the matter, but it is your duty to reconcile such differences, if any exist, and if it is possible to do so.

"If you follow the principles of law given you by the Court and if you recall the evidence in this case you ought to be able to agree upon a verdict. * * *"

After the jury retired an extensive colloquy was had between court and counsel in which exception was taken by appellant to this supplementary charge of the court.[4]

The jury was returned to the court at 11:46 P.M. and the court asked if a verdict had been reached on the entire case or any of the counts of the indictment. The foreman replied that the jury had agreed on some of the counts. When asked whether he thought it advisable that the jury deliberate any further, the foreman replied: "Sir, it's my opinion that most of us have already gotten pretty dull. That's our thinking there." The court thereupon asked the foreman his opinion about the advisability of going to bed at the hotel and resuming the deliberations on the following day, suggesting that the foreman might desire to confer with the jurors, which the foreman agreed to do. After con-

ferring a while in the judge's chambers, the foreman reported that the jury requested to be given thirty minutes more. Before retiring the foreman asked for further instruction as to count one, the conspiracy count: "do both parties charged have to be a part of that conspiracy?"

The court gave an additional charge on conspiracy in the form of some questions by the foreman and responses by the court. After the jury retired at 12:10 A.M. exceptions were taken to the supplementary charge concerning the ingredients of conspiracy, but we do not reach the question presented thereby. In thirty minutes the jury returned with the verdict outlined above upon which the court entered its judgment.

■ We find no authority for the portion of the charge where the court below gave it as its opinion that it was not to the credit of a juror to stand out in a pure spirit of stubbornness. The court's disavowal of its intention to indicate that any of the jurors belonged to that class was followed by a statement that "the law says that if that should be the case it is no credit to a juror to stand out in a pure spirit of stubbornness because he has taken a position * * *." The last statement is not supported by any authority which has been called to our attention. It was, moreover, followed by the court's comment: "If you follow the principles of law given you by the court and if you recall the evidence in this case you ought to be able to agree on a verdict."

This last opinion expressed by the court is, in our judgment, a *non sequitur*. The entire course of the jury's actions indicated that there was sharp divergence of views among its members. There was never any indication of the number of jurors who stood on the opposing sides. Under the circumstances, the court went too far, we think, when it expressed the opinion that, if the jury remembered

4. During that colloquy the court said: "All right. Let those exceptions be noted. What I told the jury is the law as I understand it and has been ever since

[Gambo v. F. M. Dugas & Son] 145 Ga. 614 [89 S.E. 679], 130 Ga. 19, [Allen v. United States] 164 U.S. 492 [17 S.Ct. 154, 41 L.Ed. 428] and 62 Mass. 1051."

the evidence and heeded the charge of the court, it ought to be able to agree upon a verdict. That opinion of the court is not supported by any law which is brought before us.

An opinion by Judge Sibley in a case resembling this one, Kesley v. United States, 5 Cir., 1931, 47 F.2d 453, 454, discussed the principles here under consideration. There, after two hours of deliberation the jury returned into court, reporting inability to agree because of doubt about the facts. The court said to its members: "Gentlemen, it is apparent to the court that some of you have forgotten that part of the charge of the court as to your oaths as jurors. It does not seem to me that there is very much doubt as far as the facts are concerned. You may retire and consider your verdict. * * *"

Dealing with the propriety of that supplementary charge the opinion says: "But comments, not upon the evidence, but reflecting on the jurors, are not permissible. * * * 'No juror should be induced to agree to a verdict by a fear that a failure so to agree will be regarded by the public as reflecting upon either his intelligence, or his integrity. Personal considerations should not influence his conclusions; and the thought of them should never be presented to him as a motive for action.' Because of the imputation of stubbornness, or worse, which is likely to arise if the numerical division of the jury is publicly revealed, to require disclosure of it is held error per se in the courts of the United States." (Citing Brasfield v. United States [272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345], supra.)[5]

These proceedings in the case before us took place after 10:00 P.M. The jurors were manifestly from rural communities where many people are accustomed to retire before that hour. Nearly two hours later, after the foreman had advised the court that most of the jury had already "gotten pretty dull," the court permitted the jury to go back to their deliberations after having given it the choice between that course and being taken to the hotel for the night.

It is implicit in the decisions of the Supreme Court dealing with the Allen case, e. g., Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, and Brasfield v. United States, 1926, 272 U.S. 448, 47 S.Ct. 135, that the Fourth Circuit was correct in its recent holding[6] "that the Allen charge, itself, approaches ultimate permissible limits * * *" in handling situations similar to that facing the court below.

The idea behind this quotation was developed at some length, with the citation of many authorities, by the Fourth Circuit in the Rogers case:

"After it had deliberated for approximately four hours, the jury reported at 4:15 o'clock in the afternoon that it was unable to reach an agreement upon a verdict. Thereupon, the Court instructed the jury regarding its duty to agree, but without ameliorating admonition that no juror should yield his conscientious conviction. * * * [P. 434]

"The charge approved in Allen approaches the limits to which the court should go in suggesting to jurors the desirability of agreement and avoidance of the necessity of a retrial before another jury. If it went much further, or if it were stripped of its complementary reminder that jurors were not to acquiesce in the views of the majority or to surrender their well-founded convictions conscientiously held, it might readily be construed by the minority of the jurors as coercive, suggesting to them that they should surrender their views

5. And see Cook v. United States, 5 Cir., 1958, 254 F.2d 871, 874, and Butler v. United States, 5 Cir., 1958, 254 F.2d 875, 876, where Kesley is cited with approval.

6. United States v. Rogers, 1961, 289 F.2d 433, 435–437.

in deference to the majority and concur in what really is a majority, rather than a unanimous, verdict.

\* \* \*

" \* \* \* Whether the court knew how the jurors were divided \* \* \* if, in fact, only a small minority of the jurors stood in disagreement with their fellows, they would necessarily take the language of the charge as being directed at them and suggesting that they, rather than the majority, reconsider their views. \* \* \* [P. 435]

"Instructions have been held to be erroneous when the Allen charge has been supplemented by a quotation from the opinion of the Supreme Court in the Allen case [citing cases] an addition in the measured words of the Supreme Court which may lend additional emphasis to the desirability of agreement, but which does not remove or destroy the force of the reminder that acquiescence is not required, and that reasoned opinions and firm convictions thoughtfully reached should not be abandoned. \* \* \* [P. 436]

"We have thus indicated that the permissibility of a direction to jurors to re-examine their views in the light of those of their fellows is dependent upon the moderating reminder of their own individual responsibility and the necessity that any verdict be that of each of the jurors and not just that of a majority. When the moderating condition which makes the direction to re-examine their views permissible, and desirable in many cases, is omitted, then the direction becomes so likely to be coercive, that a verdict rendered promptly thereafter should not be allowed to stand." [P. 437]

■ Whether in any case the Allen charge should be given rests initially in the sound discretion of the trial judge. But the correctness of the charge must be determined by the consideration of the facts of each case and the exact words used by the trial court. We think that, under all of the circumstances of this case, the words added by the court to the conventional Allen charge threw the charge out of balance and beyond the permissible limits to which a court may go in its endeavor to influence the jury towards the rendition of a verdict.

The presentation to the jury and subsequent handling of a signed statement made by Thurman Lloyd Rentz to the arresting officers after he had been apprehended for the possession of liquor covered by count two of the indictment, and after he had been sentenced for that breach of the law, is assigned as error by appellant. The statement was offered on the grounds that Rentz was then a co-defendant with appellant in the conspiracy charge. The United States Attorney agreed that the jury should not consider the statement as against appellant, and the jury was so charged. The four page statement mentions the name of "Huey Powell," the appellant, thirty times. The admissibility of the statement was not challenged by appellant, but strenuous objection was made when the government's attorney began reading it in his final argument. The court rejected appellant's objection to this procedure. We think, under the circumstances, the interests of justice probably required that the statement not be given the emphasis which the action of the United States Attorney did give it. Cf. Belvin et al. v. United States, 5 Cir., 1960, 273 F.2d 583, 587. The situation as to parties will doubtless be changed upon another trial, and the attorney for the government will probably not handle the statement as he did on the trial now under review, and we do not pass definitely upon this specification of error.

The judgment of the court below is reversed and the case is remanded for another trial.

Reversed and remanded.