**Willis CAMPBELL, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17185.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 26, 1963.

Decided March 21, 1963.

Miller, Circuit Judge, dissented.

Mr. Thomas Schattenfield, Washington, D. C., with whom Mr. Harry M. Plotkin, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Max Frescoln, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Tim Murphy, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant and a co-defendant, one Simms, indicted for robbery, were convicted, after prolonged jury disagreement and the administration of the "dynamite charge," [1] of the rather improbable lesser included offense, considering the facts of this case, of grand larceny. As to appellant Campbell, the evidence was entirely circumstantial. No witness, including the victim who had known him for twenty years, testified that the appellant, or anyone resembling him, was at the scene of the crime.

1. The "dynamite charge" is intended to "encourage" jurors to agree. For a recent critical look at the principle of "dynamite" charges, see Green v. United States, 5 Cir., 309 F.2d 852 (1962). See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Bord v. United States, 76 U.S.App.D.C. 205, 133 F.2d 313 (1942), cert. denied, 317 U.S. 671, 63 S.Ct. 77, 87 L.Ed. 539 (1942); Hoaglund v. Chestnut Farms Dairy, 63 App. D.C. 357, 72 F.2d 729 (1934). Cf. Egan v. United States, 55 App.D.C. 306, 5 F. 2d 267 (1925).

The jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Fortunately, here the evidence as to Campbell is largely uncontroverted. The question presented concerns the reasonable inferences, based on substantial evidence, which may be drawn from these undisputed facts.

The evidence tends to show that about 10:00 A.M. on February 5, 1962, Simms and one unidentified person, riding in a 1955 Oldsmobile, forced a Volkswagen truck to stop at the curb. Simms got out of the Oldsmobile and, after a scuffle in which the driver of the truck, one Jones, was severely beaten and rendered unconscious, took a brown paper bag containing a substantial sum of money from the seat of the truck. The truck and the money were owned by Jones' employer, a local supermarket. The circumstances on which the Government relied to prove beyond a reasonable doubt that the appellant Campbell was the other party in the Oldsmobile follow.

(1) Campbell's fingerprint was found on the steering wheel of the robbery car. The Government fingerprint expert testified that the print was on the spoke rather than the rim of the wheel and that it could have been present there for several weeks prior to the time he discovered it. The Government's evidence shows that the Oldsmobile was apparently owned by Simms, though the title of the car was in the name of his girl friend, Doris Mathis. Campbell dated Doris Mathis' sister, one Marjorie Martin, and in fact on occasion drove Doris Mathis herself around in the Oldsmobile. The day before the alleged robbery the two couples drove to Arlington in the Oldsmobile to visit friends, and on the day before that Campbell drove the Oldsmobile [2] to a bowling alley, picking up Doris Mathis en route.

(2) The Government also relied upon evidence indicating that Campbell was with Simms shortly after the robbery had occurred.[3] A Mr. Duncan testified that he saw Simms' car pull up at the Simms residence shortly after 10:00 A.M. on February 5, 1962, and that Simms and someone who "fit the general description of" or "resembled" Campbell mounted the porch. A Mr. Dulaney testified that as he was working on his car near Simms' residence on February 5, 1962, shortly after 10:00 A.M., Campbell approached him and asked if he fixed transmissions on cars. Mr. Dulaney was shown a line-up in which Campbell participated, but was unable to identify him. Several days later, Mr. Dulaney identified Campbell from a photograph. He repeatedly testified that the man he saw had no mustache or a very small one. Mrs. Dulaney testified that she overheard the conversation which Mr. Dulaney described, and that she further saw Campbell walking with Simms, who was then carrying a brown paper bag. She testified that the man she saw was clean-shaven and had a scar on his face. Campbell wore a prominent mustache and had no scar. It might also be noted that Mr. and Mrs. Dulaney refused even to speak to defense counsel prior to the trial.[4]

(3) Campbell's keys were found in Simms' room by the police. Campbell's explanation as to how they got there seems elaborate, but not necessarily unreasonable in view of the relationship between the two men. He testified that he had left the keys in some clothes which Simms was to take to the cleaners for him.

In evaluating all of the above evidence, consideration must be given to another circumstance. An official of the super-

2. Compare Cooper v. United States, 94 U. S.App.D.C. 343, 218 F.2d 39 (1954).

3. Compare Kemp v. United States, 114 U. S.App.D.C. ——, 311 F.2d 774 (1962).

4. Mr. Dulaney testified that he felt he could not "play both sides of a game. * * * [I]f I am working with one side, I have no business going to the other."

market whose funds were stolen, called as a Government witness, identified Simms as being one of two suspicious looking men in his store shortly before the crime, but could not say that Campbell was the other, in spite of the fact that he admitted knowing Campbell as a customer. Another Government witness, the cashier of the supermarket, also identified Simms as being one of two men loitering in the store shortly before the crime. She, too, admitted knowing Campbell as a customer but could not say that he was the man with Simms.

■■ The above recitation includes essentially all of the largely undisputed facts on which the Government relied for conviction. At best, this evidence simply shows that Simms and Campbell were friends, that on occasion Campbell drove Simms' Oldsmobile, and that Campbell was seen with Simms near Simms' home shortly after the crime, but was not the other suspicious person loitering at the supermarket with Simms shortly before the crime. In our judgment, this is not the kind of evidence which, under our law, can deprive a man of his liberty. The close association of Simms and Campbell, together with the testimony that they were seen together shortly after the crime, certainly gives rise to a suspicion that Campbell was indeed the unidentified participant with Simms in the robbery. But "[g]uilt, according to a basic principle in our jurisprudence, must be established beyond a reasonable doubt. And, unless that result is possible on the evidence, the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence." [5]

Reversed and remanded with directions to enter a judgment of acquittal.

WILBUR K. MILLER, Circuit Judge, dissents.

---

5. Cooper v. United States, supra, Note 2, 94 U.S.App.D.C. at 346, 218 F.2d at 42. See also Scott v. United States, 98 U.S. App.D.C. 105, 232 F.2d 362 (1956); Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 (1947).