**Melvin C. JENKINS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18032.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 16, 1963.

Decided Feb. 13, 1964.

Petition for Rehearing en Banc Denied April 3, 1964.

Mr. Robert R. Tiernan, Washington, D. C., with whom Mr. Jerome H. Heckman, Washington, D. C., (both appointed by this court), was on the brief, for appellant.

Mr. David Epstein, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and John H. Treanor, Asst. U. S. Attys., were on the brief, for appellee. Mr. B. Michael Rauh, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

PER CURIAM.

Evidence for the Government showed that Jenkins entered a store and, at gun point, forced an employee to give him the contents of the cash drawer. Testifying in his own behalf, Jenkins denied the robbery, said he could not remember where he was on the day in question, but admitted having been in the store on several occasions. Cross-examination disclosed a criminal record which, of course, went to his credibility. Found guilty by the jury, he appeals.

The principal claims of error advanced by Jenkins are that the trial judge gave a coercive instruction and improperly commented on the evidence. Significantly, the appellant did not object at the time and protests for the first time on appeal. Regardless of that, we have considered the matter and have concluded that, viewed in the context of the whole

charge, the challenged statements of the trial judge do not require reversal.*

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

Jenkins was convicted [1] of the robbery of $38.00 from a High's Dairy Products store and sentenced to serve three to ten years. I believe this conviction should be reversed because of two trial court errors: (1) coercive instruction to the jury, and (2) improper comment on the evidence during the charge.

## I.

The court began its charge to the jury in this case with the following words: "Ladies and gentlemen of the jury: What we have here is a very simple case that should not detain you long and in which you should have no difficulty in reaching a prompt decision one way or the other." Nevertheless, after two hours of deliberation, the jury sent the court a note reading: "The jury cannot come to a decision on both counts because of insufficient evidence." Thereupon the court gave the jury additional instructions, including: "Now, I am not going to accept this. You have got to reach a decision in this case." [2]

After further deliberation, the jury brought in a verdict of guilty on Count 1 and not guilty on Count 2. It is my view that the jury may well have concluded that the judge's additional instruction meant what it said: "You have got to reach a decision in this case"—that they

* The court's statements to the jury did not in any sense purport to be the charge under *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), to which our dissenting colleague applies colorful words such as "dynamite" and "nitroglycerin." They were no more than the judge's response to a jury which reported it was "deadlocked" after only very brief deliberations. We see no basis whatever for characterizing these statements as coercive, especially as the jury did not reconvene and resume its deliberations until the following day.

1. The indictment was in two counts: (1) robbery, 22 D.C.Code § 2901 (1961), and (2) assault with intent to commit robbery, 22 D.C.Code § 501 (1961). The defendant was convicted on Count 1.

2. The complete additional instruction reads:
"THE COURT: Mr. Foreman, the Court has received your note reading as follows:
" 'The jury cannot come to a decision on both counts because of insufficient evidence.'
"Well, you have all the evidence there is, all the evidence that anybody can have. That is what we have jurors for, to decide on the evidence. If there weren't any problems we wouldn't have a jury.
"Now, I am not going to accept this. You have got to reach a decision in this case.
"You may resume your seat, Mr. Foreman.
"Of course, every case involves a problem and you have got to weigh the evidence and reach a conclusion. That is what you are jurors for.
"Now, I am going to let you go home at this time. Each of you think it over overnight and I am going to ask you to be back here by 10 o'clock tomorrow morning and resume your deliberations. Now, from the moment you leave the jury box until you return tomorrow morning at 10 o'clock to resume your deliberations, please don't discuss this case with anyone, not even amongst yourselves, not even at home with members of your families. Each of you can individually think about it, but don't discuss it and don't let anybody talk to you about it. Perhaps after you have had a good rest overnight you will be in a position to reach a verdict.
"It is a simple case. We have cases that are much harder than this one that juries decide. As I say, if cases were open and shut we wouldn't need any juries.
"I am going to excuse you at this time and please be back in the jury room a few minutes before 10 o'clock tomorrow morning and then resume your deliberations because this case has to be decided. That is all the evidence there is, that is all the evidence anybody can have. If I excuse you we have to try the case again with some other jury and they will have the same evidence. Now that would not be very sensible, would it. So, you will be excused at this time, ladies and gentlemen of the jury. I know that you will reach a decision tomorrow after you think about it overnight."

were required to bring in a verdict. I also believe that, under the circumstances, the verdict as returned was, in all probability, a compromise.

The charge to the jury given here is more coercive than anything I have heard or read in 25 years of exposure to criminal jury trials. Even the 67-year-old *Allen*[3] charge, now condemned as "the dynamite charge,"[4] does not go so far in coercing the jury. At least in the *Allen* charge, after the jury is told that it is its duty to reach a verdict, the words "if [you] can conscientiously do so" are added. Here the jury was simply told flat out: "You have got to reach a decision in this case."

There is no requirement in law that a jury agree. As a matter of fact, a hung jury can be a safeguard to liberty. The urge to convict in times of public hysteria may be very great. And the common law recognizes that, even where there is a failure of proof, often only the uncommon man can stand against this pressure. Thus, by having a jury of twelve, with a unanimous individual vote required, a measure of protection is afforded.

The majority's approval of this coercive charge is also in conflict with two decisions of the Fifth Circuit Court of Appeals. In Powell v. United States, 5 Cir., 297 F.2d 318, 320 (1961), the instruction, "If you follow the principles of law given you by the Court and if you recall the evidence in this case you ought to be able to agree upon a verdict," was held sufficiently coercive to require reversal of the conviction. And in Green v. United States, *supra* Note 4, 309 F.2d at 855, the court held that the instruc-

tion, " * * * it is the duty of the minority to listen to the argument of the majority with some distrust of their own judgment because the rule is that the majority will have better judgment than the mere minority * * *," far exceeded permissible limits. The instruction "prejudiced the right of an accused to a hung jury and a mistrial by tending to stifle the dissenting voices of minority jurors." *Id.* 309 F.2d at 856.

A comparison of the objectionable portion of the charge given here with the charges in the *Powell* and *Green* cases demonstrates that the charge in this case was by far the most coercive. Yet in both those cases the Fifth Circuit held that the giving of such a charge was error requiring reversal of the convictions.

## II.

The second trial court error concerns the inaccurate and incomplete summary of a key prosecution witness' testimony in the charge. On cross-examination the witness, Mrs. Hodges, testified as follows:

[By defense counsel.]

"Q. Do you recall having a conversation with a Mr. Savage of the Legal Aid Agency on April 9th, 1963?

"A. No.

"Q. Do you recall an investigator of the Legal Aid Agency talking to you and asking you if you knew anything about this case?

"A. No.

"THE COURT: What is your answer?

---

3. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

4. "The Allen or 'dynamite' charge is designed to blast loose a deadlocked jury. There is small, if any, justification for its use." Green v. United States, 5 Cir., 309 F.2d 852, 854 (1962). The "dynamite charge" is also called the "nitroglycerin charge," Huffman v. United States, 5 Cir., 297 F.2d 754, 759 (1962), the "third degree instruction," Leech v. People, 112 Colo. 120, 146 P.2d 346, 347

(1944), and the "shotgun instruction," State v. Nelson, 63 N.M. 428, 321 P.2d 202, 204 (1958). This court recently noted that "[t]he 'dynamite charge' is intended to 'encourage' jurors to agree." Campbell v. United States, 115 U.S.App. D.C. 30, 30 n. 1, 316 F.2d 681, 681 n. 1 (1963), and see also cases there cited, especially Green v. United States, *supra,* and the authorities cited 309 F.2d at 854–855 n. 3.

"THE WITNESS: No."

And also:

[By defense counsel.]

"Q. Isn't it true, Mrs. Hodges, that you were actually unable to identify this defendant on a prior occasion?

"THE COURT: You will have to specify the prior occasion. You can't ask enigmas like that.

"Q. Was there a prior occasion when you were unable to identify this defendant?

"THE COURT: No, no; you will have to make clear what you are referring to. You cannot mystify a witness, Mr. Jones.

"MR. JONES: Very well, Your Honor, I have no further questions at this time."

A Legal Aid investigator, Mr. Savage, was called and testified that he had indeed interviewed Mrs. Hodges, by phone, and that she told him "she was not able to identify the man." On being recalled, Mrs. Hodges admitted that she had spoken to the investigator as he had testified. Thereafter she was asked:

[By defense counsel.]

"Q. But the question is, did you tell him that you couldn't identify him [the defendant]?

"A. Yes."

Apparently not satisfied with the answer, the court interrupted at this point to take over the questioning of the witness:

"THE COURT: Did you tell Mr. Savage that you could not identify this defendant as being the man who held up the store? Did you tell him that? Do you understand that?

"THE WITNESS: I told him that I could his face part, but that Mrs. McLeish got a better description of him.

"THE COURT: We are asking you whether you told Mr. Savage that you could not identify this defendant. Did you tell him that?

"THE WITNESS: Well, no, I didn't tell him."

In summing up this portion of the evidence, the trial court did not mention the answer Mrs. Hodges had given to defense counsel, but only the answer elicited by the court itself:

"Now the defense called an investigator, Mr. Francis Savage, who said that he telephoned Ruth Hodges and asked her concerning the matter. He further testified that Ruth Hodges said that she could not identify the man but that her co-worker, Mrs. McLeish, picked his picture out from a number of photographs furnished to her by the police.

"Ruth Hodges was called back to the stand and she testified that she did have a telephone conversation with Francis Savage, but she denied that she said she could not identify the man, but said that she told him that Mrs. McLeish got a better view of him and was better able to identify him."

A judge's discretion to comment on the facts "is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. * * * This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; * * *." Quercia v. United States, 289 U.S. 466, 470, 53 S. Ct. 698, 77 L.Ed. 1321 (1933). See also Wabisky v. D. C. Transit System, Inc., 117 U.S.App.D.C. ——, 326 F.2d 658 (1963).

The court's instruction here was not only misleading, it was also one-sided. In a simple criminal case, there is little excuse for the trial court's exercising its common law right to comment on the testimony of witnesses. The jury is in as good a position as the judge, not only to remember their testimony, but to appraise it. So, when a trial judge undertakes the risk of trenching on the function of the jury, he must do so with the

certain knowledge that his actions will be subjected to strict scrutiny. Here the summation by the court of the testimony of the identifying witness, Mrs. Hodges, is indefensible, not only from the standpoint of accuracy, but from the standpoint of fairness as well.

I respectfully dissent.