**William Henry HIET, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19716.**

United States Court of Appeals District of Columbia Circuit.

Argued April 5, 1966.

Decided June 22, 1966.

Mr. George W. Mitchell, Washington, D. C. (appointed by this court), with whom Mr. Jerome Shuman, Washington, D. C., was on the brief, for appellant.

Mr. Edward T. Miller, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., and Mr. Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and DANAHER, Circuit Judge.

PRETTYMAN, Senior Circuit Judge:

The judgment of this court is that the judgment of conviction be reversed. Judge Danaher dissents with an opinion. Judge Bazelon concurs with an opinion stating the bases for his view. My views are stated in a separate opinion, which follows:

Appellant was indicted, tried and convicted for grand larceny. The complainant reported he had left his car parked on D Street just east of New Jersey Avenue for about thirty minutes on the evening of November 24, 1964, and re-turned to find the right-front vent window jimmied open and two valuable voltage recorders (extremely sensitive low-voltage sensing devices worth $1,485 apiece) and an overcoat missing from the rear seat and two pairs of sun glasses missing from the glove compartment. The police found fingerprints on the inside of the opened vent window. The glass was not broken, but the lock was broken off. Hiet was later arrested for another offense and still later charged with this one.

The only evidence against Hiet in this case was the fingerprint taken from the car window, identified as his. He was not placed in the vicinity of the car on the evening in question, or in that immediate neighborhood at any other time. He was not shown to have been in possession of any of the stolen property at any time. None of it was ever recovered, so far as this record shows. There was no testimony as to the probable age of the print when taken, although the Government's theory was it was not more than an hour old when the expert lifted it. Evidence showed that Hiet had been living and working in the city four or five days prior to the date in question. The print may have been put on the window on any one of those days or nights. The evidence also was that the complainant owner of the car had been in the city for about two weeks, parking on the street all day and all night. There was no evidence that he locked his car when he left no valuable property in it. Hiet, wandering about the street or simply passing by, at a time other than the thirty-minute period critical in this case, may have pushed on the unlocked vent; perhaps he did so for no good purpose.

Unquestionably the print raises a suspicion. But a suspicion, even a strong one, is not enough. Guilt must be established beyond a reasonable doubt, and each and every element of the offense charged must be established beyond a reasonable doubt. The crime of larceny is that the accused did "take and carry away" something of value.[1] Obviously

1. D.C.CODE § 22-2201 (1961 ed.).

one element of the crime is that the accused took the property; not that he was at some time in the vicinity of the property but that he took it and carried it away.

■ Where only circumstantial evidence is involved, it used to be stated that to sustain conviction the proof must negative every hypothesis save that of guilt.[2] But in the *Holland* case in 1954,[3] the Supreme Court said the better rule is simply to instruct properly on reasonable doubt, and expressed the view that the additional instruction is confusing and incorrect. In the case at bar there was on the evidence in the record a reasonable doubt that Hiet took the property; indeed there was no evidence whatsoever that he took it or carried it away. Without any evidence whatever connecting Hiet with the missing property, I think there is necessarily a doubt (more than a reasonable one, I think) that he took it and carried it away. The doubt is not a visceral or moral one; it is a doubt upon the record; the lack of essential proof creates the doubt as a legal matter. So the judgment must be reversed.[4]

Several minor features of the Government's case, not in themselves important, indicate a lack of regard for accuracy on the part of some witnesses and are disturbing to me upon review:

1. The complainant at first testified in vivid precision that upon noting the condition of his car he went back to the Dodge Hotel, a block away, and asked the desk clerk how to get to the nearest police station. Later he said, "Actually, I never left the car." He then said a companion went to the hotel while he (the complainant) stayed at the car.

2. The complainant testified that this companion went with him to the police station and the police officer there (an Officer Nenno) looked at his fingers and those of his companion. Officer Nenno testified that the complainant was alone when he came in on the evening in question. Asked, "There wasn't another person?", the officer repeated, "I don't believe there was, sir."

3. The prosecutor told the court in an opening statement that a police officer would compare fingerprints taken from the car window ("latent prints") with known prints of the defendant taken on February 7, 1965. An officer did testify that he took prints of this defendant on that date, and the prints were introduced as Government's Exhibit No. 2. Another officer testified that he "lifted" prints from the car, and these were presented as Government's Exhibit No. 3. Then the witness testified that he compared Exhibits 2 and 3 and that he made enlarged photographs of one finger shown on Exhibit 3 and one on Exhibit 2. But on cross-examination the officer said he actually made his comparison on January 30th (a week before the prints in Exhibit 2 were taken), and he said, "Well, truthfully, we had another previous set of fingerprints with which they were compared." He explained that he had made his comparison with "a previous fingerprint card which we had in our office", but the photograph in evidence was of the print taken on February 7th.

The delay in this trial is also a disturbing feature to me. The offense occurred on November 24th, Hiet was placed under arrest on February 7th, and trial was had on July 14th. Since I would reverse on other grounds, I need not pursue the point.

Reversed.

---

2. Curley v. United States, 81 App.D.C. 389, 160 F.2d 229, and cases there cited, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); Cady v. United States, 54 App.D.C. 10, 293 F. 829 (1923); Read v. United States, 42 F.2d 636, 638 (8th Cir. 1930); Gargotta v. United States, 77 F.2d 977 (8th Cir. 1935).

3. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150.

4. Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954); Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963); Campbell v. United States, 115 U.S.App.D.C. 30, 316 F.2d 681 (1963).

BAZELON, Chief Judge (concurring):

I agree with the result reached by Judge Prettyman. I find it unnecessary, however, to decide whether the weakness of the fingerprint evidence alone is enough to require reversal since I rely on an additional infirmity, namely, the prejudice suffered by appellant in presenting his defense.

The alleged offense occurred on November 24, 1964. According to police testimony, appellant's fingerprints were matched with the prints on the vent window on January 30. Although he was taken into custody on another charge on February 7, he was not indicted until April 13. This unexplained delay may have substantially prejudiced appellant's alibi, his sole defense, for his only witness, his employer during the period in question, was unable to recall whether appellant was at work on the day or at the time of the robbery.[1]

DANAHER, Circuit Judge (dissenting):

This appellant contends that the District Judge erred in denying his motion to dismiss the indictment for lack of speedy trial. That motion, argued on the morning when the trial was to commence, noted that the indictment had been filed on April 13, 1965 with a trial date set for May 31, 1965. That week the Government moved to continue the trial date until July. There would seem to have been no unreasonable delay, taking all circumstances into account, for this appellant was also under indictment in Criminal No. 309–65, which had been set for trial on June 7, 1965, and in Criminal No. 403–65 which had been assigned for June 9, 1965. All witnesses in these two cases were local residents.

In the instant case, however, Criminal No. 399–65, the complainant was a resident of Philadelphia. It may well be that the Government reasonably might have anticipated that a basis could be evolved which would render unnecessary calling from Philadelphia the owner of the valuable equipment which someone had stolen on the evening of November 24, 1964. Be that as it may, there is no adequate predicate for this court to rule as a matter of law that the trial judge erred in denying the motion to dismiss. He had before him far more complete knowledge of the situation than seems to be available to us. I would say that there is no abuse of discretion, and on this aspect of the case I see no problem.

It is clear that the case was fully argued and that trial counsel said and did everything possibly open to him except to put the appellant on the witness stand.[1] Counsel might have thought as a matter of tactics that his client would be subjected to impeachment. At any rate, the appellant did not testify.

In those circumstances, the trial judge pronounced an opinion which I quote intact:

"Gentlemen, the Court is of the opinion that the evidence pretty clearly establishes that on November 24, 1964, at about 7:00 p. m., a gentleman by the name of Brian Gaffney parked his 1961 Falcon four-door sedan in the 100 block of D Street, Northwest, while he was going into the Dodge Hotel, where he was a registered guest, and from which he planned to leave, and that he left in the automobile at that time two voltage recorders each of the value of $1485, which were the property of Ambric Testing and Engineering Associates, Inc., which is a corporation, one overcoat belonging to Mr. Gaffney, which he says was of the value of about $25.00, and two pairs of sun glasses belonging to Mr. Gaffney, one of which

---

1. I note but do not rely upon the delay which resulted from the government's successful motion to postpone trial from May 28 to July 14 because appellant was to be tried on unrelated charges on June 7. It does not appear why the May 30th trial should be delayed because of another trial a week later.

1. It may be, of course, that he was deterred because of Hiet's conviction in 1955 of housebreaking and larceny, in 1958 of larceny, in 1959 of larceny, and in 1960 of yet other violations.

was worth $15.00 and the other worth $1.00.

"The evidence also establishes that at the time he left the automobile parked on the street, he saw to it that all of the doors to the automobile were locked.

"When he returned at about seven-thirty, he found that a right front vent was ajar, which had been used as a means of unlocking the door of the automobile, from which there had been removed all of the personal property inside the automobile which I have just enumerated.

"Almost immediately thereafter the automobile was driven to Police Headquarters, and appropriate steps were taken to find any fingerprints which could be identified, and the prints of four fingers were found on the inside of the right front vent, which, as I say, had been locked at the time the car was parked at seven o'clock and which was ajar when it was found at 7:30 p. m.

"The Court is of the opinion that the fingerprints which were on the inside of the vent had been placed there in the period between 7:00 and 7:30 p. m. that evening, incident to the opening of the automobile and the removal from the automobile of the personal property which had been in there at the time Mr. Gaffney left the car parked at the curb duly locked and the time he returned and found it unlocked.

"As I said a moment ago, the automobile was taken almost immediately thereafter to Police Headquarters; these fingerprints were lifted from the right front vent and thereafter were compared with the known fingerprints of the Defendant Hiet.

"On the basis of the testimony which I have heard, I am satisfied that the fingerprints on the vent of the automobile are the fingerprints of this Defendant. On the basis of all the testimony, I am of the opinion that this

Defendant did in fact remove and take possession of the personal property which was found in the automobile and, therefore, is guilty as charged in the indictment.

"I want to say to you, in my opinion the factual situations in both the Campbell case[2]—which, as I said, I was the trial judge on—and the Cephus case [3] are wholly dissimilar from the facts in this case. While it is true that the Government rests upon what we call circumstantial evidence, in the Court's opinion the circumstantial evidence in this case is overwhelming.

"To hold otherwise would be to agree with the principle of law which you stated, Mr. Hall, namely, that fingerprints alone are not sufficient to warrant a conviction. I don't accept that as the law. I am of the opinion that fingerprints under the circumstances of this case are adequate in and of themselves, taking into consideration the circumstances under which the fingerprints must of necessity have been placed upon the automobile, that is, the inside of the automobile, the inside of that part of the automobile which was tampered with and which was opened by reason of the necessity of opening that in order to gain access to the automobile. I don't think any conclusion can be drawn except that the person who did that is the person who did open the automobile and did in turn remove the contents of the automobile from the automobile.

"Therefore, it is the judgment of the Court that the Defendant is guilty as charged."

There has been no showing here that the judge's findings are clearly erroneous The law has entrusted to the trier the duty of resolving the question of the guilt or innocence of this appellant. I can not say that he erred as a matter of law.

I would affirm.

2. The *Campbell* case to which the judge refers is Campbell v. United States, 115 U.S.App.D.C. 30, 316 F.2d 681 (1963).

3. Cephus v. United States, 122 U.S.App. D.C. 187, 352 F.2d 663, petition for rehearing *en banc* denied (1965), cert. pending, 86 S.Ct. 1956.