**Maurice C. STEVENSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Ernest S. BORUM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 20092, 20093.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 20, 1966.

Decided May 19, 1967.

Petition for Rehearing En Banc in No. 20,092 Denied June 30, 1967.

Petition for Rehearing En Banc in No. 20,093 Denied Sept. 12, 1967. Certiorari Denied Nov. 13, 1967.

See 88 S.Ct. 347.

Mr. Shellie F. Bowers, Washington, D. C. (appointed by this court) for appellant in No. 20,092.

Mr. Gerald G. Schulsinger, Washington, D. C., with whom Mr. Hans A. Klagsbrunn, Washington, D. C. (both appointed by this court) was on the brief, for appellant in No. 20,093.

Mr. Barnet D. Skolnik, Atty., Department of Justice, of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER, Circuit Judge, and BASTIAN, Senior Circuit Judge.

DANAHER, Circuit Judge.

Jointly indicted, Stevenson and Borum after a jury trial were found guilty of housebreaking and robbery. Both contend on appeal that the trial court erred in denying their respective motions for judgments of acquittal at the close of the Government's case. Additionally, Borum contends that fingerprint evidence of his complicity was erroneously received because comparison had been based upon fingerprints retained after an earlier conviction which had been "set aside following his satisfying the conditions of his sentence under the Youth Offender" statute.[1] The appeals have been consolidated for presentation in this court.

On July 2, 1965, one Davis received word, and presently confirmed that his house had been forcibly entered. Its contents were in great disarray, and many items of value had been stolen. Money had been taken from a metal box, from underneath a glass top on a bedside table, and from a tea canister. Davis knew neither appellant and had never given them permission to enter his home.

A Metropolitan Police Department expert on July 2, 1965 had removed several fingerprints from the various named objects, each of which had been in the Davis home for some three to twelve years. Three prints were identical to known fingerprints of the appellant Borum, two having been lifted from the metal box and the third from the bedside table glass. A fourth fingerprint identical to a known fingerprint of the appellant Stevenson, had been lifted from the bottom of the tea canister.

Stevenson has argued that his conviction can not be sustained since there was no showing that his fingerprint had been placed on the container on July 2, 1965 or that the container was located on the premises when the Stevenson print

1. 18 U.S.C. § 5021(a) provides "[u]pon the unconditional discharge by the Division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Division shall issue to the youth offender a certificate to that effect."

was superimposed.[2] Thus, he contends, the evidence was insufficient to justify his conviction. The trial court instructed the jury that before a verdict of guilty could be returned, the jurors must be satisfied beyond a reasonable doubt that the housebreaking and robbery had occurred on July 2, 1965 as had been testified, and that Stevenson was one of those who had perpetrated the crimes.

An officer testified that when he arrived at the house about 10:30 in the morning of July 2, 1965, "Everything was strewn all over the house, there were things out all over the bed and in the living room." He proceeded to lift fingerprints from various objects. Stevenson was arrested the following evening, and some two to three hours later was fingerprinted by the police. The officer compared the known prints thus secured with that taken from the tea canister. The prints were identical, the expert testified, and both were prints made by Stevenson. He argues now that the evidence was insufficient to permit a jury to return a guilty verdict. We do not agree. Stevenson did not testify, and there was no suggestion from any source[3] that Stevenson on any account could have had legitimate access to the canister upon which his fingerprints had been found.

A like argument has been advanced by Stevenson's brother-in-law, the appellant Borum. Like Stevenson, Borum did not testify.

Under correct instructions the jury was bound to weigh the evidence and from such facts as it might find, to draw appropriate inferences respecting the guilt of the appellants. It is abundantly clear that the jury properly might conclude that Davis's house had been burglarized on July 2, 1965; that the thieves had left their fingerprints as found by the police; and that the identification of the two accused had been adequately established.

▮▮ Fingerprint identification has long been recognized by the courts as entirely appropriate.[4] The accuracy of fingerprint identification is a matter of common knowledge[5] and no case has been cited, and we have found none, where identification so established[6] has been rejected.[7] Under the circumstances here shown, the jury was fully justified in concluding that these two appellants

2. The thieves robbed Davis's mother-in-law, one Effie Thomas, of some $23.25. She was a nearly-blind 81-year-old lady who undertook no identification of the intruders who robbed her.

3. Of course where the presence of fingerprints has been susceptible of explanation offered by the accused conviction does not necessarily follow. Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954); but see Mason v. Commonwealth, 357 S.W.2d 667 (Ky.1962); compare Hiet v. United States, 124 U.S.App. D.C. 313, 365 F.2d 504 (1966), where the trial judge deemed the evidence overwhelming and that the fingerprints of the accused established his guilt. On appeal, one judge agreed with the trier, one considered the fingerprint evidence insufficient, and a third judge agreed to reverse because of prejudicial delay on the part of the prosecution.

4. Fingerprinting
"is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification." United States v. Kelly, 55 F.2d 67, 69, 83 A.L.R. 122 (2 Cir. 1932).
And see United States v. Krapf, 285 F. 2d 647, 650 (3 Cir. 1961).

5. For informational background, see State v. Kuhl, 42 Nev. 185, 175 P. 190, 3 A.L.R. 1694 (1918).

6. Other methods, but none superior to fingerprinting have been employed over the years where the courts were concerned with problems of identification. See, e. g., Shaffer v. United States, 24 App.D.C. 417, 425, 426 (1904); United States v. Kelly, supra note 4; State v. Kuhl, supra note 5.

7. See generally, Bridges, "Practical Fingerprinting" (1963) as to the "invincibility" of the identification so shown. See also 5 U.S.C. § 300 (1964) and note 12 infra.

in the course of their crime had impressed their fingerprints upon the objects described in a location to which the appellants had been accorded no lawful access. We reject the contentions of the respective appellants that the evidence was insufficient to establish their complicity, as charged.

Borum additionally has contended that enlarged photographs of Borum's prints taken at the scene of the crime could not properly have been received in evidence, since identification of those prints had stemmed from similar prints acquired by the Government following Borum's earlier arrest. The trial judge pointed out in colloquy with defense counsel that she did not agree that the Government is "not entitled to use the fingerprint because * * * [Borum's] conviction under the Youth Corrections Act has been wiped out." Over objection[8] exhibits of Borum's fingerprints taken on July 6, 1965 were then introduced.

Borum would have us say that the fingerprints which led to his identification when compared with those found in the Davis premises on July 2, 1965 were unlawfully used.[9] He quite misreads the intendment as well as the language of the Federal Youth Corrections Act upon which he relies. 18 U.S.C. § 5006(h) (1964) defines "conviction" to mean "the judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." Section 5021(a) provides that upon

> "the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the *conviction* shall be automatically set aside and the division shall issue to the youth offender a certificate to that effect." (Emphasis added.)

It is quite so that the Act is to be applied to one who may be deemed a fit subject for rehabilitation. In the event that the youthful offender by virtue of his own good conduct shall have satisfied the prescribed conditions, he may be spared the lifelong burden of a criminal record.[10] Setting aside a "conviction" in accordance with the terms of the Act can obviously redound to the great advantage of the accused.[11]

But the Act calls for no more than that the "conviction" shall be set aside, the appropriate conditions having been met.

If a court finds that a youth offender will not derive benefit from treatment under the Youth Corrections Act, the court may sentence that offender under whatever penalty provision is otherwise applicable. On the other hand, that a judge may decide that a particular offender may possibly be amenable to rehabilitation in nowise eliminates the fact that in either event, the accused will have been arrested, booked, photo-

---

8. The initial identification of Borum had stemmed from comparison of the fingerprints found in the Davis home July 2, 1965, with those already on file. Defense counsel stated: "As long as the record is clear, Your Honor, so it can be preserved for the Court of Appeals, that is all I am interested in."

9. Bynum v. United States, 104 U.S.App. D.C. 368, 265 F.2d 465 (1958) is of no help to the appellant. We held there that the Fourth Amendment rights of the accused were paramount. Since there had been no probable cause for the arrest of Bynum, the Government was not entitled to use as evidence the fingerprints thereupon secured.

10. Tatum v. United States, 114 U.S.App. D.C. 49, 51, 310 F.2d 854, 856 (1962).

And that was its purpose as Judges Parker and Phillips testified. Hearings, Senate Subcommittee on the Judiciary, 81st Cong., 1st Sess. (1949).

11. For example, under D.C.Code § 22–3204 (1961), a first offender might have a record of conviction of a misdemeanor, only, with imprisonment for not more than one year, but for a second offense under that section he might be sentenced to imprisonment for not more than ten years. Again, were an accused to violate the narcotics laws, 26 U.S.C. § 7237 (1964) provides ever-increasing penalties for a second offense and for a third or subsequent offense. Obviously, setting aside a first "conviction" under the Youth Corrections Act can be truly meaningful.

graphed and fingerprinted as an incident to his arrest.

■ We find no merit in the contention that the later setting aside of a conviction will obliterate the earlier consequences under discussion. We reject the Borum argument. Rather it is so that the Government here may properly have recourse to his fingerprints in furtherance of the congressional purpose [12] that Borum's identification records be used for the detection and prosecution of crime. It follows that there was no error on the part of the trial judge in admitting in evidence the fingerprints taken in the instant case even though Borum had been identified following their comparison with those obtained at the time of Borum's earlier arrest.

The convictions herein considered are

Affirmed.

BAZELON, Chief Judge (concurring):

In Borum v. United States, No. 19960, decided today, 127 U.S.App.D.C. ——, 380 F.2d 595, we reversed defendant's conviction because the only evidence linking him to the crime was his fingerprints on one or two ordinary glass jars found at the scene of the crime. The Government introduced no evidence indicating that the jars were inaccessible to the defendant. For example, "[t]he jury had no way to determine where the complainant purchased the jars, or how long he had them before [the date of the crime], or whether complainant ever removed them from his home".[1] Since the prints might have been on the jars "indefinitely" or at least "for a period of * * * years," the jury would have had to speculate in order to find that the defendant "never had any opportunity to touch the jars outside the house either before or after complainant bought them." [2] In short, there was no way for the jury to find that the defendant touched the jars during the commission of the crime.

In the instant case the Government introduced fingerprint evidence which proved that Borum touched a metal cash box and a glass table top found at the scene of the crime.[3] However, the Government went further. The owner of these objects testified that he purchased them five and twelve years ago respectively and that they had never left his house.[4] The evidence indicated that Stevenson touched a tin tea canister found at the scene of the crime.[5] The owner of the canister testified that she received it three years ago, and the owner of the house testified that it had not left the house since then.[6] The Government's fingerprint expert testified that under ideal conditions these fingerprints could last up to two years.[7] Complainant testified that neither defendant had ever been given permission to enter the house.[8]

12. See 5 U.S.C. § 300 (1964); as Chief Judge Biggs pointed out in United States v. Krapf, *supra* note 4, the Department of Justice [and now, the Attorney General, 5 U.S.C. § 300] had been charged with the means and authority necessary to acquire, collect, clarify and preserve identification and other records for use in the detection and prosecution of crime. Pursuant thereto the United States Marshals Manual explicitly directs that one charged with violation of federal law be fingerprinted and that the fingerprints be forwarded to the Department. And section 702.02 of the Manual further provides that "Fingerprint records may not in any case be returned to a defendant, whether or not he is acquitted of the charge against him."

Judge Biggs further observed as had other judicial writers that "It must be remembered that fingerprinting is not a punishment but a procedure, the purpose of which is to facilitate law enforcement." 285 F.2d at 651.

1. 127 U.S.App.D.C. at ——, 380 F.2d at 597.

2. 127 U.S.App.D.C. at ——, 380 F.2d at 597.

3. Tr. 140–41.

4. Tr. 21, 22.

5. Tr. 99.

6. Tr. 80, 23.

7. Tr. 169.

8. Tr. 25.

Thus, unlike the first *Borum* case, the evidence here shows that neither of the defendants could have touched the objects outside the house either before or after complainant bought them. The case, then, is distinguishable from Borum v. United States, *supra*, Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966), Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963), Campbell v. United States, 115 U.S.App.D.C. 30, 316 F.2d 681 (1963), and Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954), in which the Government failed to prove that the objects touched were generally inaccessible to the defendants. Although the evidence in this case does not prove to a mathematical certainty that the defendants touched the objects during the commission of a crime, at least the Government negated some of the most reasonable explanations for the prints consistent with innocence.