**Ralph RHYNE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 83–462.

District of Columbia Court of Appeals.

Argued March 27, 1985.

Decided May 20, 1985.

Martha J. Tomich, Appellate Law Fellow, Washington, D.C., appointed by this court, with whom Steven H. Goldblatt, Director, Appellate Litigation Clinical Program, Georgetown University Law Center, Susan L. Siegal, Appellate Law Fellow, Washington, D.C., Susan McGoldrick, and John Meagher, Law Students, were on the brief, for appellant.

Kenneth J. Melilli, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and Ronald Dixon, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, MACK and NEWMAN, Associate Judges.

NEWMAN, Associate Judge:

Rhyne asserts that his convictions for burglary and grand larceny must be reversed because of evidentiary insufficiency and prosecutorial misconduct. Since we agree with his first contention, we need not reach his second one. We reverse, concluding that viewing the evidence in its light most favorable to the government, including all reasonable inferences, *Miller v. United States,* 479 A.2d 862, 864 (D.C. 1984), it is insufficient to sustain the convictions.

During June 1981, the victims (the Matthews) hired Rhyne to do certain home repair work. Some of this work required Rhyne to enter the house, but it did not require that he enter the living room (the room from which the proceeds of the larceny were taken). During the course of his employment, Rhyne occasionally entered the house to eat, drink and to use the bathroom or telephone. None of these purposes required that he enter the living room.* In connection with the work, Rhyne occasionally used Matthews' ladder which was stored outside the house and which was long enough to reach the second floor of the house where there were windows which were generally unlocked. A back door key was kept outside the house in a location of which Rhyne became aware. Rhyne never completed the work and abandoned the job in mid-July.

Bristol, the housekeeper, testified that on July 23, 1981, the day on which she left for vacation, she dusted the furniture, includ-

---

* Since the government witnesses did not always accompany Rhyne when he was in the house, they could not testify that, in fact, he never entered the living room. They did testify they never saw him there.

ing the stereo equipment in the living room. A crime scene search officer testified that thorough dusting of a smooth surface would obliterate or smudge a fingerprint thereon.

On or about August 4, the Matthews' residence was burglarized, and stereo equipment with an approximate value of $250 was stolen. A crime scene search officer (Wilson) dusted for fingerprints. Nine latent lifts were recovered from the turntable dust cover which the burglar would have touched in taking the stereo equipment; one of the prints was of Rhyne's thumb. Wilson testified that Rhyne's print was recovered from the side of the dust cover, although the document containing the latent lift indicate that it was taken from the top of the outside surface of the cover. Wilson testified that prints would remain on surface for an indeterminate period of time if not removed, and thus, he could not determine when Rhyne's print was made on the dust cover.

Rhyne contends that these facts are basically indistinguishable from those found insufficient to sustain convictions in *Townsley v. United States*, 236 A.2d 63 (D.C. 1967), and *Hiet v. United States*, 124 U.S. App.D.C. 313, 365 F.2d 504 (1966). On the other hand, the government contends these facts more closely approximate those found sufficient to sustain the convictions in such cases as *In re M.M.J.*, 341 A.2d 421 (D.C. 1975); *Hawkins v. United States*, 329 A.2d 781 (D.C.1974), and *Patten v. United States*, 248 A.2d 182 (D.C.1968).

While we recognize that the analysis of evidence found to be legally sufficient or insufficient to sustain convictions in prior cases may often be helpful in deciding a pending case, we also recognize that adjudication of this type of issue cannot be done by looking for the proper pigeonhole. Rather, the evidence in each case must be weighed for sufficiency. Here, there was no testimony or other evidence that the entry was not forced. Without such testimony, or other evidence (as distinguished from the lack thereof) from which the jury could reasonably conclude that the entry was not forced, we do not believe that a reasonable jury, acting reasonably, could find appellant's fingerprint to be sufficiently incriminating to find him guilty.

*Reversed and remanded with instructions to enter a judgment of acquittal.*

NEBEKER, Associate Judge, concurring in the result:

I believe that the government is entitled to a fuller understanding than is given in the court's opinion of why the precedents on which it relies are distinguishable here and thus deemed not persuasive or binding. I conclude, as does the majority, that the evidence is insufficient in these unique circumstances. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The government's burden, when it relies on fingerprint evidence, is to negate at least the most reasonable explanations of that evidence which are consistent with innocence, and to show that the fingerprints were made during the commission of the crime. *In re M.M.J.*, 341 A.2d 421 (D.C. 1975). In *M.M.J.*, the print was found on a transom over an inside door, an area generally inaccessible to the public and to the appellant in that case; the government introduced evidence tending to show lack of access in fact by appellant. *Id.* at 423. In *Hawkins v. United States*, 329 A.2d 781 (D.C.1974), Hawkins' fingerprints were found on the front of a ransacked dresser, located in the robbery victim's bedroom. Although Hawkins may have visited her home on one occasion, two months before the robbery, the victim's testimony precluded any reasonable possibility that he would have touched the dresser where the print was found. *Id.* at 782. Finally, in *Patten v. United States*, 284 A.2d 182 (D.C.1968), Patten's fingerprints were on a paper bag which contained burglary tools and which was found beside a broken skylight over a store, in an area generally inaccessible to appellant or to any member of the public. *Id.* at 183.

Here, Rhyne did have access, with permission, to the room where the stereo equipment was kept, if not to the specific area of the equipment. The evidence presented does not rule out an innocent, although unauthorized, touching of the dustcover—particularly since we cannot be certain where the dustcover, which appears to have been totally removable, may have been in relation to the stolen items at the time of the burglary in an active household in which the stereo equipment was regularly used.

I also respectfully disagree with the statement in the court's opinion that because there was no testimony or other evidence that the entry was not forced, there was no evidence from which the jury could reasonably conclude that the entry was not forced. I believe a legitimate inference that entry into the house was not forced may be drawn from the owner's and the maid's testimony regarding the circumstances of the discovery of the theft: the house was left so undisturbed that the family did not realize a burglary had taken place until they noticed the stereo was missing. Here, the inference is bolstered by the fact that nothing in the house other than the stereo equipment was removed in the August burglary. The circumstances tend to rule out a burglar who needed to enter by force, not knowing another way in, and not knowing the location of a targeted valuable and relatively portable item.