

Mr. Eugene L. Stewart, Washington, D. C. (appointed by this court), for appellant.

Mr. Barnet D. Skolnik, Atty., Department of Justice of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, BURGER and WRIGHT, Circuit Judges.

**Ernest S. BORUM, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19960.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1966.

Decided May 19, 1967.

As Amended June 28, 1967.

BAZELON, Chief Judge.

Borum appeals from a jury conviction for housebreaking. In another appeal, decided today, we affirmed Borum's conviction for housebreaking and robbery committed one month after the alleged crime in the instant case. (Nos. 20092 and 20093, Stevenson and Borum v. United States, 127 U.S.App.D.C. ——, 380 F.2d 590.) In that case, as in this one, the Government's fingerprint evidence proved that at some time the defendants touched objects found at the scene of the crime. But there the Government introduced additional evidence indicating that these objects were generally inaccessible to the defendants and that therefore the objects were probably touched during the commission of the crime. Here, the Government introduced

no evidence indicating that the objects were generally inaccessible to Borum. Therefore, we reverse.

The Government's evidence showed that complainant's home was entered and ransacked in his absence between 11:45 a.m. and 3:00 p.m. on June 2, 1965. Four fingerprints, taken from one or two empty jars, were identified as Borum's.[1] Other fingerprints, found on different jars and on a metal box, had not been identified by the time of trial.[2] Complainant testified that the jars had contained a valuable coin collection and that the coin collection was stolen along with other items of personal property. However, Borum was tried for, but not convicted of, grand larceny.[3] On cross-examination and rebuttal the Government elicited testimony which, when all inferences are made in favor of the Government, placed Borum within a mile and a half of complainant's home at about 1:00 p.m.[4] Borum's principal contention is that the trial court erred in denying his motions for acquittal at the conclusion of the Government's case and at the conclusion of all the testimony.[5]

The Government's evidence shows that Borum touched the one or two jars in question. But there is no evidence, *either direct or circumstantial,* which indicates that he touched the jars in the course of a housebreaking on June 2, 1965. Indeed, one of the Government's own witnesses testified that Borum's fingerprints could have been on the jars "indefinitely." [6] And another agreed that the fingerprints could have been on the jars "for a period of * * * years." [7] The Government introduced no evidence which could account for, or even suggest an inference about, the custody or location of the jars during that period.

1. A print of Borum's right middle finger was found together with a print of his right ring finger. Two prints of his left middle finger were also found together. The Government expert could not tell whether the two pairs of prints were found on the same jar. Tr. 51, 70. Therefore, there were four separate fingerprints representing three different fingers which were found on one or at most two jars.

2. Tr. 66–67.

3. Borum was tried in this case on two counts—housebreaking and grand larceny. The jury found him guilty on the first count but could not agree on the second count. Tr. 224. The second count was dismissed one month after the trial.

4. Tr. 169–75.

5. The motion must be granted "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt * * *." Curley v. United States, 81 U.S.App.D.C. 389, 392–393, 160 F.2d 229, 232–233, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). See also Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963); Campbell v. United States, 115 U.S.App.D.C. 30, 316 F.2d 681 (1963); Cooper v. United States, 94 U.S. App.D.C. 343, 218 F.2d 39 (1954).

6. Tr. 83.

7. Tr. 68.
   There can be no dispute in this case (1) that in order to make the fingerprints support Borum's conviction of housebreaking the Government was required to show that he touched the jars on June 2, in the course of the housebreaking; and (2) that the Government relied on the fingerprint evidence alone. The trial judge charged the jury as follows:
   The Court charges you, members of the jury, because of the fact that two of the Government's expert fingerprint witnesses testified that latent fingerprints on certain objects may last indefinitely, unless the Government has proved beyond a reasonable doubt that the fingerprints the Government relies on were left by the defendant on June 2nd, 1965 at the time of the alleged housebreaking on the objects referred to in the expert's testimony, you must find the defendant not guilty.
   Now the Government rests its case in this matter of expert testimony on what is called circumstantial evidence. In criminal cases there are two types of evidence. One type is known as direct evidence, and another type of evidence is known as circumstantial evidence. By direct evidence is meant evidence of eye witnesses who saw the act perpetrated.
   Now there was no one who testified here that they saw the defendant commit the housebreaking or grand larceny. The Government relies, as I said

Of course, the jury may have thought that Borum could not have touched the jars at any other time or in any other place. The jury may have thought that Borum never had any opportunity to touch the jars outside the house either before or after complainant bought them.[8] But that conclusion would have been based on speculation alone. The jury had no way to determine where the complainant purchased the jars, or how long he had them before June 2, or whether complainant ever removed them from his home, or how long the prints were on the jars.[9] The Government need not negate all inferences consistent with innocence which could arise from the fingerprints.[10] It negated none.[11]

With evidence so inconclusive, a reasonable person must have a reasonable doubt about Borum's guilt.[12] The case should not have been submitted to the jury, for the Government produced no evidence, *either direct or circumstantial,* which could support an inference that the fingerprints were placed on the jars during commission of the crime. Fingerprint evidence is very reliable. It is a kind of evidence courts should encourage police to obtain. But to allow this conviction to stand would be to hold that anyone who touches anything which is found later at the scene of a crime may be convicted, provided he was within a mile and a half of the scene when the crime may have been committed. We decline to adopt such a rule.

Reversed with directions to enter a judgment of acquittal.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I join the court's opinion because there is not a scintilla of evidence, other than the four single fingerprints, to support this conviction. Moreover, the Government's fingerprint expert testified that the fingerprints in question could have been on the jar for several years, and there is no accounting in the record for the custody of the jars during this period. In addition, the only eyewitness in the case, who was made available to the defense by the Government under Brady v. State of Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), testified that the man he saw on the victim's porch around the time of the crime was not the appellant. Under the circumstances, to affirm the conviction in this case on fingerprint evidence alone without accounting for the custody of the jars would be to adopt a rule of law for use in similar cases which, as the court points out, would jeopardize the liberty of every person who ever touched anything later found at the scene of a crime.

before, upon the circumstantial evidence of the fingerprints. Tr. 212.

In fact, the only "direct" evidence in the case was the testimony of an eye witness who said that Borum was not the man he saw on the complainant's porch around the time of the crime. Tr. 94.

8. It is at least reasonable to suppose that Borum touched the jars in question outside the house, since the police did not find Borum's fingerprints on any of the other jars or on anything else in the house, even though the house was forcibly entered and thoroughly ransacked. See, e. g., tr. 31–32, 66–67.

9. The Government expert agreed that he could not tell whether the prints "were recent prints or old prints." Tr. 68.

10. Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963), Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954), Curley v. United States, note 5, *supra.*

11. Borum made no attempt to explain the existence of his fingerprints, but under our law he was not obliged to do so.

12. Similar evidence was found insufficient in Cephus v. United States, note 5, *supra;* Campbell v. United States, note 5, *supra;* Cooper v. United States, note 5, *supra;* and Hiet v. United States, 124 U.S.App. D.C. 313, 365 F.2d 504 (1966). (In *Hiet* one judge found the evidence insufficient. The concurring judge relied on another infirmity in addition to the weakness of the evidence.) In those cases, as in this one, the Government failed to prove that the objects were generally inaccessible to the defendants. Compare Stevenson and Borum v. United States, *supra.*

Hyperbole and predictions of gloom and doom, of course, are often the hallmarks of a dissent. The dissent here, however, exceeds normal limits. Its exercise in frustration is particularly difficult to understand since this court today affirms another conviction against Borum under which he will serve from 20 months to five years. Moreover, the dissent is misled by inaccurate record references and unfounded assumptions as to the facts. For example: (1) Throughout the dissent it is assumed that Borum, possibly with confederates, took a 300-pound coin collection from the home of the complaining witness. At page 600 the dissent states: "Since Appellant could hardly have carried 300 pounds of coins alone, the jury could infer that he had several confederates who also left prints." The fact is that Borum was tried for, but not convicted of, grand larceny based on the alleged theft of the coin collection. No "confederates" were even charged. (2) The dissent argues that Judge Prettyman's opinion in *Hiet v. United States*, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966), in which a conviction based on fingerprint evidence was reversed, is irrelevant because "there the fingerprints were in an *automobile* parked on a *public* street." (Emphasis in the dissent.) In *Hiet* the fingerprints were found on the inside of a vent window of a car whose lock had been broken off. (3) The dissent, as shown in its footnote 7, apparently is influenced by two other *Borum* cases, one still on appeal (No. 20,270) and the other handed down today (Borum v. United States, No. 20,093, 127 U.S.App. D.C. ——, 380 F.2d 590). The records in those cases, of course, are not part of the record in this case. Under familiar principles, consideration of them here is inappropriate and legally impermissible. (4) The dissent states that *Borum* No. 20,093 "is affirmed today on evidence essentially the same, *i.e.*, fingerprints, which the majority finds insufficient in this appeal." Unlike this case, in *Borum* No. 20,093 the evidence shows that Borum's fingerprints could have been left only at the time of the crime. Thus the danger of setting a precedent which could result in the conviction of innocent people on fingerprint evidence alone is avoided.

I share Judge Burger's enthusiasm for a jury, particularly if it is composed of a random cross section of the people rather than the result of a selection made by jury commissioners. But where under the law the evidence is insufficient to take the case to the jury, the court has a responsibility to act. I join the court in so doing.

BURGER, Circuit Judge (dissenting):

The majority sets a new record of usurpation of the jury's fact finding function in a case which presents essentially the same facts as does another criminal conviction of Appellant affirmed by this court today.[1] The majority justifies the holding with no more than the astonishing statement that "if we allow this conviction to stand, anyone who touches anything which is found later at the scene of a crime could be convicted. * * *" If there are any "predictions of gloom and doom" in what is said today, I suggest they are to be found in that statement.

No one questions that a court is required to grant a motion for acquittal if the evidence is such that a reasonable juror *must* have a reasonable doubt as to the defendant's guilt. But today's holding blandly ignores the corollary to this

---

1. Stevenson and Borum v. United States, 127 U.S.App.D.C. ——, 380 F.2d 590 (Nos. 20092–93, decided May 19, 1967).

Appellant's principal contention on the instant appeal was that evidence of his fingerprints should not have been admitted because they were compared with and identified from a police record of his prints which should have been physically expunged when an earlier larceny conviction was set aside under the Youth Corrections Act. Federal Youth Corrections Act § 2, 64 Stat. 1089 (1950), 18 U.S.C. § 5021(a) (1964). Judge Danaher has abundantly covered this issue in today's companion case. In light of his treatment it is significant that in both cases all of us join in rejecting this claim.

proposition, which we have stated in our leading case on the subject, that

> if a reasonable mind *might* fairly have a reasonable doubt or *might not* have one, *the case is for the jury,* and the decision is for the jurors to make.[2]

Moreover, this court has made it plain that the mere existence of other possible hypotheses is not enough to remove the case from the jury:

> If the judge were to direct acquittal whenever in his opinion the evidence failed to exclude every hypothesis but that of guilt, he would preempt the functions of the jury. Under such a rule, the judge would have to be convinced of guilt beyond peradventure of doubt before the jury would be permitted to consider the case. That is not the place of the jury in criminal procedure. They are the judges of facts and of · guilt or innocence, not merely a device for checking upon the conclusions of the judge.

*Supra* at 393, 160 F.2d at 233.

Law enforcement agencies have been given frequent judicial lectures that they should rely on "scientific" evidence rather than on confessions and recent Supreme Court decisions in criminal cases reflect this point of view. Here we have a conviction resting on one of the highest forms of scientific evidence.

The undisputed evidence before the jury in this case established that 300 pounds of coins were stolen, that four separate fingerprints of Appellant were found on glass jars in which the coin collection was kept, and that these jars were stored in the second floor closet of a private home to which Appellant had no lawful access.

Many cases have found fingerprint evidence alone to be sufficient to support conviction. *E.g.,* Mason v. Commonwealth, 357 S.W.2d 667 (Ky.1962); *see generally* cases cited in ANNOT., 28 A.L.R.2d 1115, 1150–1157 (1953).[3] Judge Danaher covers this fully in his opinion today affirming Borum's conviction in the companion case, *Stevenson and Borum, supra* note 1. The majority in the instant case considers four fingerprints so inconclusive that reasonable persons must necessarily have a reasonable doubt about Appellant's guilt. The majority seems to assume that the prosecution's case must answer *all* questions and remove *all* doubts, which, of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt.

Judge Bazelon solemnly states the obvious, that we must not let juries speculate. But it is surely equally obvious law that on appeal all inferences from the evidence must be made *against,* not for, Appellant, and that a reviewing court may not indulge in speculation. Judge Bazelon ignores these very basic rules and embarks on an excursion of appellate speculation wholly outside the record.

---

2. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947) (emphasis added). *See also* Crawford v. United States, 126 U.S.App. D.C. 156, 375 F.2d 332 (No. 19,816, decided Feb. 17, 1967); Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954); *cf.* Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963).

3. *Judge Bazelon does not attempt to distinguish these cases.* Instead, he cites fingerprint cases resulting in reversal because "the government failed to prove that the objects were generally inaccessible to the defendants except during the commission of the crime." I submit that the trial judge properly concluded that 12 jurors who are directed to apply their experience in life and their common sense might reasonably conclude that glass jars stored in a closet on the second floor of a private home are "generally inaccessible" without direct proof of such by the Government.

The majority's reliance on Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966), for the proposition that "similar evidence was found insufficient" is patently inaccurate. Judge Bazelon did not join the opinion in *Hiet* with regard to the sufficiency of evidence; *one* judge considered it insufficient. Even assuming insufficiency of .evidence in *Hiet,* it has no bearing here; there the fingerprints were in an *automobile* parked on a *public* street—a far cry from coin collection containers in a private home.

To me, the problems which the majority sees in this case are to be resolved—as they were here—by allowing the jurors to perform their traditional duty, applying their collective experience in weighing probabilities, to determine whether it was reasonable to draw an inference that Appellant entered the complainant's home and, alone or with others,[4] committed a crime.

Nevertheless, Judge Bazelon frets:

> The jury had no way to determine [1] where the complainant purchased the jars, or [2] how long he had them before June 2, or [3] whether complainant ever removed them from his home, or [4] how long the prints were on the jars.

Here we have not one judicial speculation but *four* in a transparent effort to create an illusion of doubt. We surely can assume that Appellant's experienced trial lawyer made those arguments to the jury if she thought they had any validity. But when judges do this they take on the partisan role of advocates, especially in making contentions rejected by the lawful fact finders. Judge Bazelon goes on to state

> there is no evidence *either direct or circumstantial* which indicates that he touched the jars in the course of a

housebreaking on June 2, 1965. (Emphasis original.) [5]

Under this novel and remarkable standard the majority denies the jury its right to draw reasonable inferences from facts in evidence.

The majority holding includes a fact finding exercise which is beyond our competence and power as an appellate court.[6] For example, plainly implicit in Judge Bazelon's statement that unidentified prints were found is the hint that someone else did the deed; he thus adopts defense counsel's theory which 12 jurors rejected. Since Appellant could hardly have carried off 300 pounds of coins alone, the jury could infer that he had several confederates who also left prints.

Judge Wright argues that Borum's fingerprints could have been on the jars for several years and that "there is no accounting in the record for the custody of the jars during this period." He thus vaguely intimates some "rule" of law that the *victim* of a crime must account for his own property at all times! Of course, there is no such rule. Secondly, he rests on the fact that an eyewitness saw a man *other* than Appellant on the porch of the victim's home about the time the crime was committed.[7] Just what Judge Wright wants us to infer

---

4. Other, unidentified prints were found on the glass jars. A jury might reasonably infer from this and the great weight and bulk of the coin collection (300 pounds) that Appellant had confederates in the crime.

5. Common sense suggests how utterly remote is the probability that Appellant's prints innocently appeared on complainant's glass jars. Had it been known in advance that this court would weigh the evidence jury-fashion, the Government could readily have produced the evidence which the majority now holds is lacking, showing when and where the owner acquired the jars and whether and when he washed them. The dissatisfaction of the majority with the Government's case should at the very least be remedied by a remand for a new trial as permitted by Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).

6. We recently stated:
   > It is not the function of appellate judges to weigh the evidence and decide that if *they* had doubts other reasonable persons were compelled to have the same doubts. If they were the test the jury of twelve would be relegated to the very low grade function of secondary fact finders.
   
   Crawford v. United States, *supra* note 2, 126 U.S.App.D.C. at 158, 375 F.2d at 334 (emphasis original).

7. It is interesting to note that in Borum's conviction of another housebreaking and robbery, which is today affirmed by another division of the court, his co-defendant was one Stevenson. Borum's counsel in the instant case stated that Stevenson was the "other man" seen on the porch of the coin collector's home. Borum's conviction in the second case rested on fingerprints found on a glass table top and

from the presence of this "other man" is not clear. That a witness saw a man on the porch is no evidence that Borum was not present; the presence of one of Borum's confederates has not even a remote tendency to weaken the case against Borum.

Finally, Judge Wright gains comfort from the fact that the jury acquitted Appellant on the larceny charge and convicted him only of housebreaking; he seems to argue by inference that the jury found that while Appellant broke into the house he did not carry off the coins. Perhaps so, but the evidence is undisputed that there were 300 pounds of coins missing and it would be reasonable to suppose that the housebreaker, and others, carried them off. Judge Wright also seems to overlook the Supreme Court rule on inconsistent verdicts:

> The most that can be said in such cases is that the verdict shows that either in the acquittal or conviction the jury did not speak their real convictions, *but that does not show that they were not convinced of the defendant's guilt.* We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through leniency.

Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), quoting Steckler v. United States, 7 F. 2d 59, 60 (2d Cir. 1925) (emphasis added).

Having conjured up their own speculative explanation and "bootstrapped" themselves into doubt and confusion, my colleagues conclude:

> The Government need not negate all inferences consistent with innocence which could arise from the

fingerprints. It negated none. (Footnotes omitted).

Resolving factual and credibility issues contrary to the decision of the trial judge and 12 jurors is a favorite sport of some appellate judges, but that function is not lawfully ours. Judge Youngdahl, the trial judge, after hearing all the evidence, and against his background of more than 30 years as a trial and appellate judge, was fully satisfied that a rational inference of guilt could be drawn by the jury from the evidence. Judge Youngdahl examined this aspect of the case first on a motion for acquittal, second on a motion for a directed verdict, and for a third time on a motion for judgment N.O.V. His memorandum on denial of that motion is included as an appendix to this dissent; it reflects his scrupulous care in evaluating the evidence.

To the already vast array of safeguards fashioned for the protection of an accused, including the ancient presumption of innocence, the requirements for proof beyond reasonable doubt, and a unanimous verdict, my colleagues would add a new dimension: that guilt must be established beyond *all* and every *doubt.*[8] Happily that effort falls on the same day it is launched. But it is only a fortuity that Borum is not to be released today to renew his career of crime, since he stands convicted of *three* crimes all committed within a relatively short space of time. My colleagues set him free as to the conviction in this case but his conviction in *Stevenson and Borum* is affirmed today on evidence essentially the same, *i.e.,* fingerprints, which the majority finds insufficient in this appeal. Borum's appeal in his third case is awaiting briefs.

It should be clear from Judge Danaher's excellent opinion in *Stevenson and*

---

metal box from which money was taken. See Stevenson and Borum v. United States, *supra* note 1.

8. In demanding such proof my colleagues forget that when our forbears of the common law system vested the fact finding power in 12 lay jurors, their purpose

was to allow the interaction of 12 diverse minds to resolve factual issues on which the legally trained mind might tend to employ a technical and formalistic approach. The founders also contemplated that jurors were free to dispense justice tempered by human impulses, as they did here in holding Borum on only one count.

*Borum* that the result in the instant appeal cannot be regarded as changing the basic rule on the respective roles of judge and jury. At best, it is an isolated instance of judges dabbling in the jury function of dispensing mercy and exercising the executive function of dispensing clemency.

I suggest that the kind of nit-picking appellate review exhibited by reversal of this conviction may help explain why the public is losing confidence in the administration of justice. I suggest also that if we continue on this course we may well come to be known as a society incapable of defending itself—the impotent society.

## APPENDIX

United States District Court

For the District of Columbia

UNITED STATES OF AMERICA,

Criminal No. 944–65

PLAINTIFF

v.

ERNEST S. BORUM, DEFENDANT

ORDER DENYING MOTION FOR NEW TRIAL OR JUDGMENT NOTWITHSTANDING THE VERDICT

The defendant, Ernest S. Borum, following conviction for housebreaking in this Court on December 8, 1965, has moved for a new trial or a judgment of acquittal notwithstanding the verdict.

The defendant's reliance upon the case of Cooper v. United States, 94 U.S.App. D.C. 343, 218 F.2d 39 (1954), is misplaced. The fingerprint in that case was found in the getaway car, which Cooper was purchasing. Two factors influenced the Court of Appeals in reaching its decision that the print did not constitute sufficient evidence for a conviction. First, the Court found that "the fingerprint was natural, as * * * [Cooper] fre-

quently drove the car and was in fact paying for it." *Id.* at 345, 218 F.2d at 41. Second, it found that "[t]he total absence of any semblance of direct proof against Cooper, in the presence of so much direct proof as to the robbery and the robbers, must * * * make a reasonable man have a reasonable doubt upon the evidence as it stood." *Id.* at 345, 218 F.2d at 41–42.

These two factors crucial to the *Cooper* holding were not present in the instant case. Here no hypothesis exists explaining the presence of the defendant's fingerprints at the scene of the crime in such a manner as necessarily to raise a reasonable doubt of his guilt. The prints were found, not on an automobile which the defendant frequently drove, but on glass jars in the ransacked home of the complaining witness. The latter identified these jars as the containers of his coin collection. This location is hardly a "natural" one in which to find the defendant Borum's fingerprints. It is of further significance that the defendant declined to use an expert fingerprint witness whom the Court had permitted him to hire at government expense. Instead the government offered the testimony of this witness identifying the prints as being the defendant's as part of its case-in-chief. Moreover, this case, unlike *Cooper,* contained no direct evidence as to the events of the robbery. The government's reliance here upon circumstantial evidence does not therefore raise the same doubts about the defendant's guilt which it did in *Cooper.*

The Court has not found, nor has the defendant brought to its attention, any case in which a court, faced with similar conditions of discovering fingerprints and identifying them, has held that fingerprint evidence was not sufficient to support a conviction.[1] In this case a reasonable man could have found that the government had proved this defendant guilty as charged beyond a reasonable doubt, and therefore the case was proper-

---

1. On the contrary, the sufficiency of fingerprint evidence in a proper case to support a conviction has repeatedly been announced by the courts. For collections of cases, see 28 A.L.R.2d 1150–1156 (1953); 63 A.L.R. 1325 (1929); 16 A. L.R. 370–371 (1922).

ly submitted to the jury. Accordingly, the motion for a new trial or a judgment notwithstanding the verdict will be denied.

/s/ *Luther W. Youngdahl*
Judge

January 12, 1966