**UNITED STATES of America**

v.

**Larry LUCAS, Appellant.**

**No. 85–5213.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 12, 1985.
Decided Dec. 13, 1985.

Sidney R. Bixler, Washington, D.C., appointed by this Court, for appellant.

Mona C. Mack, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Douglas J. Behr, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM.

Appellant Larry Lucas was indicted for possession of valium, a controlled substance, in violation of 21 U.S.C. § 844 (1982). Lucas moved to suppress tangible evidence obtained in his warrantless arrest, arguing that the arresting officer acted without probable cause. Following an evidentiary hearing, Lucas' motion was denied by a United States Magistrate, and the Magistrate's recommendation that the motion to suppress be denied was subsequently adopted by the district court. On December 26, 1984 Lucas entered a guilty plea to the charged violation, but retained the right to bring this appeal of the district court's denial of his suppression motion. Because probable cause existed sufficient to justify the arrest and search of Lucas, we affirm the district court's decision.

## I.

On July 26, 1984 at approximately noon an anonymous telephone caller told Metropolitan Police Officer Welsh that two women were then selling valium outside the police station (Tr. 6). The caller described two black women, one heavy-set and using a walking crutch, the other slightly heavy-set. The caller stated that she had made a previous call to the police station and that her sister had purchased valium from the two women and subsequently had become unconscious (Tr. 6–7). Officer Welsh left the station and searched the area, but did not see any persons matching the descriptions given by the caller.

The next day as Officer Welsh left work at approximately 2:00 p.m., he saw a heavy-set black woman with a walking crutch (Brown) get out of an automobile. Officer Welsh entered his personal automobile and used a pair of binoculars to observe the woman from approximately 20–25 yards away (Tr. 11). The woman was approached by another woman, a slightly heavy-set black woman (Bradford). Officer Welsh observed the second woman hand an unidentified "object" to the first woman, which the first woman placed in her right front trouser pocket (Tr. 12).

Within a "few minutes" (Tr. 12) Officer Welsh observed two cars pull alongside the two women, and each time Officer Welsh observed the woman with the crutch approach the passenger side of the car, move her hand in the direction of her right front pocket, reach into the car, engage in some sort of transaction with the occupants of the car, and return her hand to the area of her right front pocket. Brown and Bradford, who were indicted with Lucas, were within three feet of each other during these transactions and afterwards stood together (Tr. 12–13).

Shortly thereafter, a third woman (Jones) approached the two women, had a short conversation with them, and then walked over to appellant Lucas, who was standing nearby. Lucas handed Jones what ap-

peared to Officer Welsh to be "currency," a "green object," whereupon the first woman removed an "object" from her right front trouser pocket and "poured" something into Lucas' hand which he placed in his left front pocket (Tr. 14–15, 50–52).

Officer Welsh, concluding he had witnessed a sale of narcotics, then entered the police station, sought the assistance of another officer, and went outside where he arrested Lucas. A search of Lucas' left front pocket revealed six valium tablets (Tr. 15). On his guilty plea before the district court, Lucas was convicted of possession of these tablets in violation of 21 U.S.C. § 844 (1982).

## II.

A warrantless arrest in a public place is permissible only if the arresting officer has probable cause. *Henry v. United States*, 361 U.S. 98, 100–02, 80 S.Ct. 168, 169–71, 4 L.Ed.2d 134 (1959). Probable cause exists when, considering the totality of the circumstances, a reasonably prudent person applying "common sense conclusions about human behavior"[1] would believe that a crime has been committed or is being committed. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983);[2] *Carroll v. United States*, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The circumstances must be viewed from the perspective of a reasonable, cautious police officer in light of the officer's experience and training. *United States v. Davis*, 458 F.2d 819, 821–22 (D.C.Cir.1972).

In this case it is clear that probable cause existed based upon the anonymous tip subsequently corroborated by the activi-ties directly observed by Officer Welsh. As previously stated, the caller stated that two black women, one heavy-set and using a crutch, the other slightly heavy-set, were selling valium outside the police station. Although Officer Welsh did not see anyone fitting this description immediately after the telephone call, he spotted a heavy-set black woman using a crutch the next afternoon outside the police station. As Officer Welsh observed from his private automobile, the telephone tip was further corroborated when he observed a slightly heavy-set black woman exchange something with the heavy-set black woman using the crutch who thereafter furtively exchanged something from her right front pocket with the occupants of two automobiles. This all occurred in the same area that had been described in the telephone tip (Tr. 12–13). From this set of observations Officer Welsh could reasonably have concluded that the two women were selling drugs, as had been indicated by the anonymous informant. The accuracy of the informant's description of the two women had been corroborated by their presence the second day at the same place engaging in furtive transactions that usually accompany the sale of controlled substances the informant had described.

Appellant Lucas was involved in the third transaction observed by Officer Welsh. When a third woman approached the two women described by the telephone caller, a short time after the two car transactions, Officer Welsh watched Lucas give "something green" to the third woman as the woman using the crutch drew an "object" from her trouser pocket and "poured" something into Lucas' hand (Tr. 14, 50–52).

---

**1.** *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), *quoting United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

**2.** *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983) abandoned the two-pronged test of *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), for determining probable cause for the issuance of a search warrant and substituted a "totality of the circumstances" standard under which the corroboration of details of an informant's tip by independent police work is of significant value. *Cf. Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The applicable probable cause standard so announced embodies a "practical, non-technical conception" that deals with "probabilities," not "hard certainties," and permits law enforcement officers to weigh the evidence as "*. . .* understood by those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328–29.

Officer Welsh then reasonably concluded that Lucas had at that moment purchased narcotics from the woman described by the telephone caller (Tr. 15). This conclusion was reasonable since it was based on suspicious observed events similar to the many everyday street exchanges involving narcotics and other controlled substances that have been held to constitute probable cause in cases before this court. *See, e.g., United States v. Green,* 670 F.2d 1148, 1150–53 (D.C.Cir.1981) (pecuniary transactions of a type common to narcotics peddling); *United States v. White,* 655 F.2d 1302, 1303–04 (D.C.Cir.1981) (per curiam); *United States v. Davis,* 561 F.2d 1014, 1016–17 (D.C.Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977) (three subjects within a space of five minutes handed appellant what appeared to be money and appellant would then count out a number of small objects that were given to strangers before their departure); *United States v. Thomas,* 551 F.2d 347, 347–48 (D.C.Cir.1976) (per curiam).

This court need not determine whether the anonymous tip alone would have justified Officer Welsh in arresting Lucas according to the standards of *Illinois v. Gates,* 462 U.S. at 213, 103 S.Ct. at 2317, because in this instance the tip was subsequently corroborated before the arrest of Lucas by Officer Welsh's direct observation of activity that alone could reasonably have been taken for drug transactions. Likewise, this court need not determine whether the direct observations of Officer Welsh could by themselves have provided probable cause for the arrest. Both the tip *and* the direct observations of Officer Welsh were correctly taken into account by the district court in determining under the "totality of the circumstances" that probable cause existed to arrest Lucas. *Id.* at 230, 103 S.Ct. at 2327. Such facts were sufficient to satisfy the probable cause requirement for making the arrest.

In addition to the foregoing, two additional facts buttress this court's conclusion that probable cause existed. First, in his patrolling duties Officer Welsh had some experience in observing drug-related transactions, having observed some two dozen drug transactions (Tr. 10, 33). *See United States v. White,* 655 F.2d 1302, 1304 (D.C. Cir.1981). Second, Officer Welsh knew of previous arrests for the sale of valium in the area in which this transaction occurred (Tr. 7–8). Moreover, the observed transactions had taken place in an area within one block of the District of Columbia Methadone and Detoxification Center, the District of Columbia Jail, and the District of Columbia General Hospital. While the record evidence does not establish that this was a high-crime area, *see United States v. White,* 655 F.2d at 1304, the knowledge of prior valium sales in this area and the proximity to the Methadone and Detoxification Center furnish additional support for the conclusion of an experienced, reasonably prudent police officer that drug transactions were likely to occur in this area and that what he had observed were illegal sales of controlled substances.[3]

In short, an anonymous tip to Officer Welsh was substantially corroborated by the presence of two women engaging in suspicious transactions that could reasonably form the basis for a conclusion of illegal conduct of the type reported by the caller. Appellant Lucas was party to the third observed transaction, and we conclude that probable cause existed at that time to arrest him. The judgment of the district court is therefore affirmed.

*Judgment accordingly.*

---

**3.** This conclusion falls short of the government's position that the location of the transaction was a high-crime area in which there obviously was a substantial market for illegal drugs. While there may be a factual basis for the inference that a methadone clinic would support a substantial market for drug sales, this was not shown by record evidence.