851 F.2d 361
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Gregory GARCIA and Fernando Jon Gallegos,
Defendants-Appellants.
 
 1
 Nos. 87-5103, 87-5152.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted Dec. 11, 1987.
Decided June 23, 1988.
 
 3
 Before O'SCANNLAIN and LEAVY, Circuit Judges, and SPENCER WILLIAMS,** District Judge.
 
 
 4
 MEMORANDUM*
 
 BACKGROUND
 
 5
 On February 13, 1987, a jury found appellants Anthony Gregory Garcia and Fernando Jon Gallegos guilty of conspiracy to manufacture and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1). The jury also found Gallegos guilty of the manufacture of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1). No verdict was rendered as to the remaining count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1), and it was later dismissed.
 
 
 6
 Appellants Gallegos and Garcia appeal from their convictions. Jurisdiction is proper in this court pursuant to 28 U.S.C. Sec. 1291. Based on the discussion below, we affirm the district court.
 
 FACTS
 
 7
 On July 7, 1986, a man calling himself "Chuck Markay" rented a vacant house at 41272 De Luz Road in Fallbrook, California. The house is located on a graded dirt road which runs through a lightly populated area for about twelve miles from Fallbrook. The road dead ends about three miles north of the house. Markay, who was later identified as co-defendant Mercier,[1] paid cash to rent the property as a "weekend retreat" and asked that the caretaker, Ron Goodman, do most of the work during the week so that the weekends would be private.
 
 
 8
 The house, including the garage area, was fairly empty of furniture when rented to the man. Early in the morning on July 15, 1986, Goodman went to check on the property and saw water running down the driveway. Upon closer inspection, Goodman noticed that a pipe with hoses was sticking out of the garage door and that the windows were boarded. By looking through a crack in the window, Goodman saw boxes and canisters in the room and water on the floor. He also smelled a strange odor. Goodman immediately contacted three neighbors, one of whom was Jerry Manske, an off-duty Los Angeles homicide detective, who returned to the home with him. After either opening up the garage door or looking through a garage window from which they had removed the boards,[2] they discovered what appeared to be a lab for manufacturing drugs. Goodman then called the local sheriff.
 
 
 9
 Later that morning, Deputy Sheriff James Beaty of the Fallbrook Patrol responded to a radio call directing him to the residence at 41272 De Luz Road. He, too, noticed the large amount of water running down the driveway. After speaking with Goodman, Beaty looked into the garage through the window from which the boards had been removed[3] and saw glass kettles filled with red liquid and electrical thermostats plugged into the wall but submerged in water. Fearing a possible explosion, he located the circuit breaker to cut off the power. Beaty secured the house and made sure no one was inside. He sent Deputy Homenick, who had arrived in a separate car, down the road to "Camp Retreat" to meet with Goodman. Sergeant Castillo and two other deputies also arrived on the scene.
 
 
 10
 Juan Garcia, a gardener who worked and lived next to the house, provided the police with a description of two vehicles he had seen at the house the previous day: a "very pretty", "very new", almost white Toyota truck and a 1978 or 1979 model G.M. or Chevrolet truck. He had also seen four men taking boxes into the house the day before, but remembered only one--a heavy set Hispanic male.
 
 
 11
 Deputy Beaty radioed Deputy Homenick the description of the two vehicles and the large Hispanic male seen at the house the day before. About twenty minutes later, Homenick radioed Beaty that he had just passed one of the suspect vehicles driven by a heavy set Hispanic man heading in the direction of the house. Beaty positioned his patrol car on a ridge east of the house. At the same time, marked vehicles and the detectives' unmarked car were parked outside the house. With binoculars, Beaty had clear vision down De Luz Road to Camp Retreat and observed a tan Toyota truck coming toward him. He saw the vehicle stop, make a U-turn, and head in the other direction back down the road. Beaty radioed Homenick to stop the Toyota truck and the white pickup truck which had followed right behind it.
 
 
 12
 Homenick stopped his patrol car in the middle of the road, got out with his shot gun, and took cover. Sergeant Castillo and two other deputies helped order the occupants of the trucks out of their vehicles.[4] Defendant Gallegos was the driver of the tan Toyota and defendant Garcia was the passenger. The two men in the white Chevrolet pickup were co-defendants Camarena and Gilbert. Sergeant Castillo had never seen Garcia but had some "familiarity" with Gallego, Camarena, and Gilbert.
 
 
 13
 Juan Garcia was brought to the arrest scene and was able to identify Gallegos as the individual he had seen the day before, but he could not identify any of the three other people under arrest.
 
 
 14
 San Diego County Narcotics Agent Russell Oliver was summoned to the De Luz Road residence to investigate the lab. On his way, he passed the arrest scene where the four defendants were kneeling on the ground. He stopped and asked Gallegos for permission to search the tan Toyota truck. Gallegos said, "sure, go ahead,"[5] whereupon Oliver found a closed cardboard box behind the driver's seat. The box contained glass items known as "reducing adapters" used in the laboratory set-up for the manufacture of maethamphetamine.
 
 
 15
 All four men were taken to the Fallbrook Sheriff's station where fingerprints were taken of each as part of the booking procedure. Garcia was released later that evening because Agent Oliver felt he did not have sufficient evidence to charge him.
 
 
 16
 Five or six hours after the arrests, Agent Oliver searched the house and garage pursuant to a search warrant. He found numerous items used in the manufacture of methamphetamines, including a "clean"--chemicals had not been placed in it--4,000 milliliter beaker with Garcia's fingerprints on it and a condenser tube with Gallegos's fingerprints on it.
 
 DISCUSSION
 I. Probable Cause
 
 17
 Both appellants Gallegos and Garcia argue that the law enforcement officers did not have probable cause arrest them. We disagree.
 
 
 18
 Probable cause is required for a warrantless arrest made in public, United States v. Watson, 423 U.S. 411, 423 (1976), and it is a mixed question of law and fact which is reviewed de novo. United States v. Pinion, 800 F.2d 976, 979 (9th Cir.1986), cert. denied, 107 S.Ct. 1580 (1987); United States v. Smith, 790 F.2d 789, 791 (9th Cir.1986). Findings of fact on which the district court based its conclusion as to probable cause are upheld unless clearly erroneous. Pinion, 800 F.2d at 979; Smith, 790 F.2d at 791. Probable cause for a warrantless arrest and a search incident to that arrest exist if "under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded there was a fair probability that the suspect had committed a crime." United States v. Gonzales, 749 F.2d 1329, 1337 (9th Cir.1984).
 
 A. Appellant Gallegos's arrest
 
 19
 Appellant Gallegos argues that the descriptions of the pickup trucks and the individuals were unreliable informant hearsay which would not justify the arrest subsequent to the stop of the defendants. That argument has no merit as it applies to Gallegos.
 
 
 20
 Police corroboration of information from informants provides a substantial basis to credit hearsay. United States v. Fixen, 780 F.2d 1434, 1438 (9th Cir.1986), citing Illinois v. Gates, 462 U.S. 213, 245 (1983).[6] Events involving the agents at the De Luz Road residence coincided with the informant's statements. The two pickup trucks and one of the drivers matched Juan Garcia's description. The drivers made abrupt U-turns near the home when they presumably saw the marked police car.
 
 
 21
 Furthermore, Gallegos's actions indicated he had dominion over the truck he drove. It was in that truck that additional glassware typically used in methamphetamine manufacture was found. In addition, the house was located in a remote area and the street was a dead end. Thus, the police officers could reasonably conclude that a crime had been committed when they discovered the methamphetamine lab in the garage of the residence. It was prudent for the police to infer that Gallegos was connected to the crime.
 
 
 22
 Appellant Gallegos refers to Wong Sun v. United States, 371 U.S. 471 (1963), in which the Supreme Court held no probable cause existed to arrest the suspect for heroin distribution. Wong Sun is distinct from the case at bar, however, because the police had no corroboration of the informant's report suggesting narcotics production. Nor did the law enforcement officials find the drug or related paraphenalia in the suspected building. Furthermore, as the Court noted in its ruling, the police officers' behavior actually provoked the suspect's flight. Id. at 484.
 
 
 23
 In contrast, Draper v. United States, 358 U.S. 307 (1959), more closely parallels the case at bar. There, the Supreme Court found probable cause. A reliable police informant provided a very specific description of the suspect. In addition, the agent corroborated the informant's predictions of the suspect's movements. The Court emphasized that the officer "personally verified" almost every facet of information the informant provided.[7] Id. at 313.
 
 
 24
 Statements by the citizen informants in this case, coupled with observations by the officers at the DeLuz Road residence and their discovery of glassware in the trunk, presented a sufficient basis for a person of considerable caution to believe that an offense had been committed and that Appellant Gallegos was involved. The district court did not err when it held that these reasons provided probable cause to arrest Gallegos.
 
 
 25
 B. Garcia's arrest and the fingerprint evidence
 
 
 26
 1. Probable cause.
 
 
 27
 Appellant Garcia argues that the facts and circumstances which the arresting officers knew did not present probable cause to initiate a full scale arrest.[8] Appellant Garcia makes much of the fact that he was a passenger in the truck driven by Gallegos and that none of his actions indicated he maintained control over the truck or the box containing glassware inside the truck. He contends that nothing suggested Garcia even knew to what destination Gallegos was driving. According to Garcia, there may have been probable cause to arrest Gallegos, but it did not extend to Garcia. He argues he should have been released by the police immediately. Thus, Garcia contends that his fingerprints taken incident to his arrest constitute fruit of an unlawful arrest, and the district court should have surpressed that evidence. See Wong Sun, 371 U.S. at 484.
 
 
 28
 This circuit has addressed the issue of whether there is probable cause to arrest a passenger of a vehicle when others he accompanies are more certain suspects of a narcotics crime. In United States v. Moses, 796 F.2d 281 (9th Cir.1986), narcotics agents had observed Moses in the company of two other men who purchased large quantities of chemicals and odd household items in keeping with PCP manufacture. The agents observed them taking the objects in a car to one of the suspects' homes. The next day, when the agents stopped the three men, Moses was a passenger in the car. The court found the officers had probable cause to arrest Moses. Id. at 284.
 
 
 29
 However, the facts of appellant Garcia's involvement do not rise to the level of evidence available to the officers in Moses. For instance, at one point the officers observed Moses actually pay for some of the chemicals. Also, they surveilled them for a continuous 24 hour period and observed that the men never left each other's company. In addition, using a key possessed by Moses, the agents opened the trunk of the suspects' car and found additional chemicals. Id. at 282-83.
 
 
 30
 Despite this distinction, the agents had sufficient evidence to warrant a decision to arrest Garcia. Appellant suggests that his arrest resulted from the improper association of him with Gallegos, an individual for whom they did have a description. Even if true, had Juan Garcia not conveyed a description of Gallegos, but merely stated he saw the two trucks and the four men unloading boxes, the agents would have had probable cause. They observed events from which they could reasonably associate the four defendants and their trucks with the four men who were connected to a house that had as its only purpose the operation of a methamphetamine lab.
 
 
 31
 Thus, the district court did not err when it held that these reasons provided probable cause to arrest appellant Garcia.
 
 
 32
 2. Inevitable discovery.
 
 
 33
 Garcia argues that the district court improperly failed to reach the issue of whether the evidence of his fingerprints should have been suppressed as the fruit of an unlawful arrest. Appellant relies on Hayes v. Florida, 470 U.S. 811 (1985), in which the Supreme Court ruled that where there was no probable cause to arrest, investigative detention for fingerprinting purposes violates the fourth amendment. Fingerprints taken under such circumstances constitute inadmissible fruits of illegal detention. However, Hayes is clearly inapplicable here since the court has held that the agents had probable cause to arrest appellant Garcia.
 
 
 34
 In addition, the inevitable discovery doctrine would allow the admission of Garcia's fingerprints into evidence. This exception to the exclusionary rule applies if the prosecution shows by a preponderance of the evidence that an exemplar of Garcia's fingerprints would have been discovered inevitably by lawful means. See Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Martinez-Gallegos, 807 F.2d 868, 870 (9th Cir.1987).
 
 
 35
 Appellant Garcia has argued that his alleged illegal arrest was the "but-for" cause of the introduction of the fingerprint comparison. See United States v. Rowell, 612 F.2d 1176, 1179 (7th Cir.1980). Even if this were true, the agents would have inevitably sought to possess an exemplar of Garcia's prints to compare them to those latent fingerprints found on the glassware in the house. Appellant Garcia suggests that, had Deputy McIntosh not taken the fingerprints at the station house on the day of arrest, the agent would not have been able to determine whose fingerprints were on the beaker later found in the bedroom closet of the DeLuz Road house. This argument lacks merit. From the facts and circumstances known to the agents on July 15, 1986, they would have had sufficient cause to continue to consider Garcia a possible suspect. They would no doubt have obtained his prints at a later time in accordance with a grand jury investigation.[9]
 
 
 36
 Furthermore, appellant Garcia's reliance on Hayes is misplaced. The Court expressly left open the possibility of the inevitable discovery doctrine applying to other situations. Hayes, 470 U.S. at 814 n. 1, citing Nix, 467 U.S. at 431. Furthermore, in that case, the agents did not have a good-faith basis to believe they had probable cause. The agents went to the home of a suspect, coerced him into accompanying them to the police station for fingerprinting, and held him until they compared his prints to the crime scene latents. Only then did the agents arrest the suspect. Id. at 813.
 
 
 37
 II. Sufficiency of Evidence to Sustain Garcia's Conviction
 
 A. Standard of Review
 
 38
 On a challenge to the sufficiency of the evidence, the standard of review is whether there is substantial evidence to support the conviction. United States v. Nolan, 700 F.2d 479, 485 (9th Cir.), cert. denied, 462 U.S. 1123, (1983). Under this test, the court of appeals must uphold a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found defendant guilty beyond a reasonable doubt of each essential element of the crime charged. United States v. Sharif, 817 F.2d 1375, 1377 (9th Cir.1987), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). The elements of conspiracy are (1) an agreement to accomplish an illegal objective, (2) coupled with one or more acts in furtherance of the illegal purpose, and (3) the requisite intent necessary to commit the underlying substantive offense. United States v. Disla, 805 F.2d 1340, 1348 (9th Cir.1986).
 
 B. Essential elements of conspiracy
 
 39
 It has long been recognized that conspiracy prosecutions are inherently suspect, designed as they are to encompass an amorphous mass of defendants. See, e.g., United States v. Falcone, 109 F.2d 579, 581 (2d Cir.), aff'd, 311 U.S. 205 (1940). The evidence used to convict appellant Garcia may have been more tenuous than that available for his co-defendant. Nonetheless, we uphold his conviction.
 
 
 40
 1. Existence of a conspiracy.
 
 
 41
 Existence of a conspiracy may be proved by circumstantial evidence that defendants acted together for a common illegal goal. Disla, 805 F.2d at 1348. The government's evidence need not exclude every reasonable hypothesis consistent with innocence. United States v. Miller, 688 F.2d 652, 663 (9th Cir.1982).
 
 
 42
 Here, the prosecution did not produce any evidence to suggest that Garcia knew the other two men in the truck behind him or Mercier, the man who rented the house. Nevertheless, a great deal of circumstantial evidence suggests that the defendants agreed to accomplish the illegal manufacture of methamphetamine. Using an alias, Mercier rented a house in a remote area near a dead end. The house was not used for living in any fashion. Its only purpose was to make and store methamphetamine. Chemicals and equipment were stored in a bedroom closet. A lab set up was in the garage. Four men were seen taking boxes off two trucks and placing them inside the garage. Garcia is attached to this agreement circumstantially through his fingerprints on the beaker in the closet. That beaker--an erlenmeyer flask--was "clean," but it is a piece of equipment used in the making of the drug. Other evidence garnered from the date of arrest is circumstantial. Appellant Garcia was found riding in a truck at 9 a.m. on a weekday morning headed in the direction of the De Luz Road residence. That truck, under the dominion of a suspect described by a citizen informant, contained additional glassware. These facts satisfy the Disla approach.
 
 
 43
 2. Overt acts.
 
 
 44
 Once a conspiracy exists, evidence establishing the defendant's connection with the conspiracy beyond a reasonable doubt is sufficient to convict defendant of knowing participation in the conspiracy, even if the connection is slight. United States v. Taylor, 802 F.2d 1108, 1116 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1309 (1987). This rule creates a presumption that one who acts in furtherance of a conspiracy knows of its existence. United States v. Perez, 491 F.2d 167, 170 (9th Cir.), cert. denied, 419 U.S. 858 (1974). Acts which seem otherwise innocent when viewed in the context of the surrounding circumstances may justify an inference of complicity. United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.), cert. denied, 449 U.S. 1038 (1980). While mere proximity to the scene of illicit activity is not sufficient to establish involvement in a conspiracy, a defendant's presence may support such inference when viewed in context with other evidence. United States v. Reese, 775 F.2d 1066, 1071-72 (9th Cir.1985).
 
 
 45
 Appellant Garcia asserts that the only evidence against him is that he was a passenger in Gallegos's truck and his fingerprint was on a "clean" laboratory beaker in a bedroom. These acts may indeed seem innocent, but when viewed in context with the other evidence presented, a jury could reasonably infer that Garcia was one of the four men observed the day before the arrest and that his latent print on the beaker shows that he participated in the illegal manufacture of the drug.
 
 
 46
 The facts of this case are similar to those of United States v. Talbert, 710 F.2d 528 (9th Cir.1983), cert. denied, 464 U.S. 1052 (1984), in which the court upheld a conviction of first degree murder where the defendant's fingerprint was found on what was almost certainly the murder weapon. In that case, the appellant argued that the government did not show that the print could only have been made at the time of the crime. The court noted, however, that it was extremely unlikely that the defendant had touched the weapon--a bowling pin--at an earlier time. Id. at 530-31. The victim slept in a bowling ball storage room. Only the pin with the defendant's fingerprint was located near the victim. All other pins were stored in a separate area of the building. The court held that the jury could reasonably conclude that the bowling pin was not in the victim's room until his murder. The court went on to note that the case was not a "fingerprints only" case. Id. at 531. For instance, the government also showed that the defendant and the victim had engaged in marijuana transactions over time and that the defendant believed the victim to have stolen money from him. The defendant also may have been in the vicinity of the bowling alley during the time of the murder.
 
 
 47
 Appellant instead relies on the ruling in Borum v. United States, 380 F.2d 595 (D.C.Cir.1967) to establish lack of evidence. The court reversed a housebreaking conviction for insufficiency of evidence. The defendant's fingerprints were found on a jar in the complainant's house that had contained a stolen coin collection. Other evidence placed the defendant close to the home near the time of robbery. However, the government's own witness testified the fingerprint could have been on the jar indefinitely. Id. at 596. The court held that the jury may have thought the defendant never had an opportunity to touch the jar before or after the complainant bought it. But that would be pure speculation. Thus, the court reversed the conviction. Id. at 597.
 
 
 48
 The court in Talbert distinguished that case from Borum : "the holding in Borum and its progeny only is applicable in situations where there is no additional evidence linking the defendant to the crime." Talbert 710 F.2d at 531. As in Talbert, the additional evidence present in the case against Garcia is sufficient to link the appellant to the acts of the illegal drug manufacture.
 
 
 49
 3. Requisite intent.
 
 
 50
 The manufacture and possession of methamphetamine are specific intent crimes. Garcia suggests that the government did not produce any evidence to show that he was ever connected to drug trafficking, use, users or paraphernalia. He presented character evidence at trial which showed that a lifelong friend knew him to be hard working and law abiding. Appellant argues that a conviction based on his "mere presence" and the fingerprint is ludicrous.
 
 
 51
 In contrast, however, we believe that the jury could garner appellant's intent to commit the crimes from the activity in which he was involved. This circuit has recently upheld a conviction of conspiracy to manufacture and distribute methamphetamine against a defendant who faced similar circumstantial evidence against her. United States v. Calabrese, 825 F.2d 1342 (9th Cir.1987). In that case, the defendant's brother told an informant that he and the defendant's husband made methamphetamine. Id. at 1348. The only evidence that incriminated the defendant specifically was a list of chemicals and notes--both in her handwriting--which suggested what income should be reported on tax returns, as well as false identification papers for the couple. These were found in the home the defendant shared with her brother. The agents also found firearms and large quantities of cash and equipment consistent with a home-based methamphetamine laboratory. Citing the list and the notes as sufficient evidence, the court upheld the conviction. Id.
 
 
 52
 III. Garcia's Jury Instruction Regarding "Mere Association"
 
 
 53
 When reviewing an attack on a particular instruction, the court must consider the jury instruction as a whole, and the adequacy of the entire charge must be evaluated in the context of the whole trial. United States v. Marabelles, 724 F.2d 1374, 1382 (9th Cir.1984). A trial judge has great discretion in formulating jury instructions as long as they "fairly and adequately cover the issues presented." Id. at 1383; United States v. James, 576 F.2d 223, 226 (9th Cir.1978). As long as the instructions fairly and adequately cover the theories put forth by the defense, "[i]mperfectly formulated jury instructions will serve as a basis for overturning a conviction only upon a showing of abuse of discretion." United States v. Hayes, 794 F.2d 1348, 1351 (9th Cir.1986), cert. denied, 107 S.Ct. 1289 (1987) (citations omitted).
 
 
 54
 To establish that conspiracy law prohibits a finding of "guilt by mere association," appellant Garcia requested that the district court give an instruction based on United States v. Melchor-Lopez, 627 F.2d 886 (9th Cir.1980) and United States v. Purin, 486 F.2d 1363 (2d Cir.1973), cert. denied, 417 U.S. 930 (1974).[10] The trial court rejected this conspiracy instruction and gave instead the following standard instruction:
 
 
 55
 Mere similarity of conduct among various persons, and the fact that they have associated with each other, and may have asembled together and discussed common aims and interests does not necessarily establish the existence of a conspiracy. And although one may become a conspirator without full knowledge of all the details of the conspiracy, a person who has no knowledge of the conspiracy, but simply happens to act in a way which furthers some object or purpose of it, does not become a conspirator.
 
 
 56
 Garcia's objections to this instruction are not well taken. The instruction does not put the burden on the defendant to prove he was not a member of the conspiracy. In addition, taken as a whole with the other instructions given, it is clear that the trial judge hit the point home that guilt can not be established through mere association. In another instruction, he told the jury that mere presence at the scene of the crime and knowledge that a crime is being committed is not sufficient to establish aider and abettor liability. The district court also gave careful instructions on the meaning of specific intent, distinguishing between a knowing and intentional act and an act done for an innocent reason or by accident or mistake.
 
 
 57
 The district court fully and adequately covered the points that appellant Garcia wanted to raise with his proposed instruction. The defendant is not entitled to any particular wording in an instruction, and there is no evidence of abuse of discretion. Accordingly, there is no error.
 
 
 58
 IV. Warrantless Search Of The House On De Luz Road
 
 
 59
 Appellant Gallegos argues in his brief that Jerry Manske's participation in the warrantless search of the house on De Luz Road constituted a violation of the fourth amendment and that all evidence seized as a result of that search should have been suppressed.
 
 
 60
 The trial court ruled that Gallegos did not have standing to contest the search of the drug house. He did not challenge this ruling in his brief before us. In addition, Gallegos moved to submit his case for decision without oral argument. The findings of fact of the trial court must be upheld unless clearly erroneous, while the application of a rule of law to those facts is reviewed de novo. United States v. Alfonso, 759 F.2d 728, 741 (9th Cir.1985). Accordingly, his challenges to the district court's ruling are waived. See United States v. Blasco, 702 F.2d 1315, 1332 n. 28 (11th Cir.1983); United States v. Robertson, 588 F.2d 575, 577 n. 2 (8th Cir.1978), cert. denied, 441 U.S. 945 (1979); United States v. White, 454 F.2d 435, 439 (7th Cir.1971), cert. denied, 406 U.S. 962 (1972).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 **
 Honorable Spencer Williams, Senior United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Defendant Mercier pled guilty before the trial of Garcia and Gallegos began and was not called as a witness by either the government or the defense
 
 
 [2]
 Defendant Garcia claims that the garage door was actually opened at this time. The government in its brief states only that boards were removed from a garage window through which the drug lab was observed
 
 
 [3]
 Appellant Garcia alleges that Deputy Beaty actually entered the house to make this observation
 
 
 [4]
 At the motions hearing on October 20, 1987, Judge Judith N. Keep for the Southern District of California ruled that the four occupants, including appellants Garcia and Gallegos, were under arrest at the moment they were ordered out of their trucks at gunpoint. The court found that there was probable cause to arrest because the vehicles driven matched descriptions of vehicles seen the day before, the description of the driver Gallegos matched the description given by a neighbor, an active methamphetamine lab was in operation at the De Luz residence, the De Luz Road area was extraordinarily remote, and the vehicles made a U-turn or "furtive turnaround" away from the residence
 
 
 [5]
 Judge Keep ruled that the consent was voluntary
 
 
 [6]
 The agent may consider hearsay when he determines whether there is probable cause to arrest without a warrant. Draper v. United States, 358 U.S. 307, 311-312 (1959). The Supreme Court pointed out that there is a large difference between what is required to prove guilt and what is necessary to show probable cause for arrest or search
 
 
 [7]
 Other circuits emphasize the importance of police corroboration of informant's information. The D.C. Circuit found probable cause based on a description of two heavy set black women allegedly selling valium. United States v. Lucas, 778 F.2d 885 (D.C.Cir.1985). The arresting officer observed suspicious activity that suggested an exchange of money and pills. The Eighth Circuit has stated that an anyonymous tip from an informer may serve as a basis for probable cause as long as its reliability is established through corroboration. United States v. Briley, 726 F.2d 1301, 1306 (8th Cir.1984). That court also stated its preference for a citizen informant with no known motive to falsify over a professional informant. Id
 
 
 [8]
 Appellant Garcia's brief seems to admit that the police had sufficient cause to stop the vehicles for investigatory purposes under Terry v. Ohio, 392 U.S. 1, 21 (1968)
 
 
 [9]
 Neither the fourth nor the fifth amendment prohibits the prosecution from obtaining fingerprint exemplars. See United States v. Wade, --- U.S. ----, 105 S.Ct. 1643 (1985)
 
 
 [10]
 The instruction read:
 There can be no guilt by association, and it is clear that mere association with members of a conspiracy, the existence of an opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator.
 A mere willing participation in acts with alleged co-conspirators, knowing in a general way that their intent was to break the law, is insufficient to establish a conspiracy.
 See Melchor-Lopez, 627 F.2d at 891; Purin, 486 F.2d at 1369.